[No. 3411.   June 11, 1929.]

STATE v. RENNER.

[279 Pac. 66.]

J. Lewis Clark, of Estancia, for appellant.

M. A. Otero, Jr., Atty. Gen., for the State.

OPINION OF THE COURT

CATRON, J.   Elmer Renner, charged with stealing 40 head of neat cattle, was convicted in the district court of Torrance county, and appeals.

The criminal information, so far as material, charges that Elmer Renner, of the county of Torrance, state of New Mexico, on the 1st day of July, 1928, in said county and state, unlawfully and feloniously did steal 40 head of

neat cattle, the property of Shults Bros., a copartnership composed of G. C. Shults and H. G. Shults.

The material facts testified to by the prosecution are: That about July 2, 1928, the Shults Bros., a copartnership composed of G. C. Shults and H. G. Shults, also known as Ted Shults, who ran cattle on their range, about 20 miles east of Estancia, N. M., and adjoining the ranch or pasture of defendant, discovered one of their pasture fences cut, and, upon investigation, missed about 40 head of their cattle. The tracks, where the cattle passed through the cut fence, indicated that the cattle had been driven by two persons on horseback. After several days' search, about 40 head of cattle, bearing the brand of the Shults Bros., were found in the possession of one Nicolas Maes near Ancho, Lincoln county, N. M. Maes produced a bill of sale for said cattle which purported to have been signed by "Ted Shults," one of the brothers who owned said cattle, and identified the defendant as the person who on July 7, 1928, sold and delivered him the cattle, and who executed and gave him the bill of sale therefor, under the name of "Ted Shults." J. M. Frame, a notary public at Ancho, identified the defendant as the person for whom he had prepared the bill of sale to Nicolas Maes, and who appeared before him on July 7, 1928, and executed and acknowledged the same under the name of "Ted Shults." Several other witnesses also identified the defendant as the man seen with Nicolas Maes in Ancho on July 7, 1928, and also described a Chevrolet roadster which he was at the time driving, and which was by other witnesses shown to be defendant's car. That Ted Shults did not execute the bill of sale and the signature thereto was not his.

To meet and overcome this proof, defendant testified that he was not in Ancho on July 7, 1928, that he knew nothing whatever about the whole affair, and that he had not been near Ancho between July 1st and July 8th, 1928. In order to prove that he could not have been in Ancho, July 7, 1928, he offered the testimony of many witnesses, incuding every person whom the record showed could possibly have any knowledge of his whereabouts during the period from July 1, to July 8, 1928, excepting one

witness, Charles Lambert, who could not be procured, but the testimony which Charles Lambert would have given, if present, was set forth in a motion for continuance, and the prosecution, to avoid a continuance, admitted that Charles Lambert, if present, would testify to the facts stated in the affidavit, and the facts were read as evidence to the jury. The testimony of the defendant and his witnesses, if true, made it impossible for him to have been in Ancho, N. M., on July 7, 1928. We thus have an irreconcilable conflict between the testimony of the prosecution and defense.

Defendant has presented six grounds for reversal. The first point argued by appellant in his brief is that the trial court erred in admitting in evidence, over the objection of the defendant, the specimen of defendant's handwriting, which the defendant made in compliance with demand upon him by the district attorney and sheriff while defendant was in the custody of the latter. This ground of error is predicated upon the following facts:

During the testimony of Felipe Alderette, sheriff of Torrance county, the prosecuting attorney endeavored to identify two signatures by the defendant, one his signature of his own name, "G. E. Renner," the other his signature of the name of "Ted Shults," said signatures having been made by defendant while he was under arrest and in the custody of the sheriff of Torrance county, and also endeavored to lay the foundation for the introduction of the signatures in evidence. The witness had been asked:

"Q. Did you see him write the names of any persons upon those occasions? A. Yes, sir."

To the foregoing defendant's attorney objected as follows:

"We object to this line of questioning, Your Honor; they are attempting to have the defendant furnish more evidence, and we take the position that admissions of any kind that are not voluntary are improper. He has been asked to do things and say things, and he has said them and done them and we contend it is inadmissible in a case of this kind unless warned in advance that these things you say and do will be used against you if you are brought to trial. We want to object before the jury gets the benefit of what they are trying to put in."

There seems to have been no direct ruling on this objection, but, on account of a subsequent objection, it becomes material.

After the signatures had been fully identified, the district attorney offered the same in evidence, and defendant's attorney objected as follows:

"We object on the same grounds that we made at the beginning of the testimony as being involuntarily made by the defendant while in the custody of the officer, at the officer's request or at the request of the District Attorney in the presence of the sheriff when the defendant was under duress and didn't write voluntarily because he thought he had to do it."

This objection was overruled, and the signatures were admitted in evidence, defendant excepting to the ruling.

By reading the two objections together, it will be seen that the objection made was that, the defendant being under arrest and in duress, the signatures were not admissible, unless vountarily made. It is sufficient to state that the district attorney very carefully laid the foundation for the introduction of the two signatures by testimony to the effect that the defendant was cautioned that any statement he might make about the case could and would be used against him in court, if he were brought to trial; that there was no promise, coercion, or threat used by any one to cause the defendant to sign the two names; that the defendant did not object or protest to signing them, but did so voluntarily. Indeed, the defendant while on the stand testified in his own defense, admitting that he was not compelled or forced to sign them, and flatly stated that he had no particular objection to signing them, and later, when asked if he cared to write the name of "Ted Shults" again, stated that it made no difference to him, athough he could see no reason for it, as they already had his writing, but he again wrote the name of "Ted Shults."

Under the facts disclosed by this record, it appearing that the defendant voluntarily signed his name and the name of "Ted Shults," the court correctly admitted the signatures in evidence, and we find no error in its ruling. State v. Ascarate, 21 N. M. 191-201, 153 P. 1036; State v. Barela et al., 23 N. M. 395, 168 P. 545, L. R. A.

1918B, 844; State v. Vaisa, 28 N. M. 414-417, 213 P. 1038.

Appellant, however, contends that, if the signatures were properly admissible in evidence, the question of the voluntary or involuntary making of same should have been left to the jury for determination, and the jury should have been instructed to consider the evidence only in case it found the signatures to have been freely and voluntarily made by defendant.

This is entirely a different question .from that covered by defendant's objection to the admission of the signatures in evidence. Undoubtedly had defendant requested the trial court to give an instruction of the character suggested above, the court would have so done, or, upon re-·fusal so to do, appellant could have preserved his record and assigned error in this court  But defendant did not request any such instruction, nor was the trial court's attention in any manner called to, nor did the trial court rule upon, such question, nor was any objection taken to any instruction given by the court. This court has repeatedly held that questions, points, issues, and matters which are not jurisdictional, not raised, presented, or passed upon below, are not reviewable on appeal. Park v. Milligan, 27 N. M. 96-99, 196 P. 178.

Appellant next argues that the trial court erred in overruling defendant's motion for a continuance and compelling defendant to go to trial unprepared on account of insufficient time, under the circumstances, to prepare his defense. .

Appellant in his brief argues that, although the granting of a continuance is a matter within the discretion of the trial court, in this case the court abused that discretion. We have very carefully examined the entire record in this case, and it discloses that every person who could possibly know anything material to defendant's defense was accessible or was produced by defendant as a witness in his behalf, except the one witness, Charles Lambert, whose testimony, however, was read to the jury as hereinabove pointed out. Appellant failed to indicate· in his motion for continuance or to point out to this court

in what particular the defendant was injured or how a continuance could have benefited him in any matter in the preparation of his defense or how substantial justice was perverted. The record strongly indicates that the defendant was not injured in any manner by being compelled to go to trial at the time he did.

It has been repeatedly held by this court that the granting or denying of a motion for continuance, upon grounds similar to the one here raised, is within the discretion of the trial court, and, unless such discretion has been abused, to the injury of the defendant, the denial of such motion will not constitute error. Territory v. Emilio, 14 N. M. 147, 89 P. 239; Territory v. Lobato, 17 N. M. 666—680, 134 P. 222, L. R. A. 1917A, 1226; State v. Pruett, 22 N. M. 223-227, 160 P. 362, L. R. A. 1918A, 656; State v. Starr, 24 N. M. 180-191, 173 P. 674.

Under the circumstances of this case, we must hold that the trial court did not commit an abuse of discretion, and consequently there was no error in its ruling.

Appellant next contends that the court erred in compelling defendant to write while on the witness stand in the presence of the jury and in admitting in evidence the writing over defendant's objection.

As we have herein pointed out, defendant while on the stand and testifying in his own behalf, when asked to write the name of "Ted Shults," stated that it made no difference to him, and that he had no objection to writing it. He wrote the name of "Ted Shults," and, when the writing was offered in evidence, his attorney objected upon the sole ground, "it is incompetent." Appellant here argues that the admission of the signature in evidence was in fact compelling the defendant to give evidence against himself, because the signature was not voluntarily made. The record, however, discloses that the signature was voluntarily made, therefore our holding under point 1 is equally applicable to the present question and decisive thereof, and the trial court committed no error in its ruling.

Appellant next contends that the trial court committed error in denying defendant's motion for a directed

verdict of not guilty. A determination of this question will also dispose of the fifth ground of error, which is that the verdict of the jury is unsupported by sufficient evidence.

At the close of the case, defendant made the following motion:

"Comes now the defendant and moves the court to instruct the jury in this case to find a verdict of not guilty for the reason that the defendant is charged with stealing and driving away neat cattle, the property of Shults Brothers in Torrance County, State of New Mexico. There is no evidence in this case that this man was ever in possession of any cattle in Torrance County nor in Lincoln County. We think that the State has failed absolutely to prove that material part of the information charged against the defendant."

Upon which motion the trial court ruled as follows:

"Counsel is in error about the charge; there is no charge in this information of driving cattle; he is charged with stealing only, and the court overrules the motion."

The record contains substantial evidence to support the criminal information. In fact, it contains extremely strong evidence of guilt, which the jury might well believe. The trial court, therefore, properly overruled said motion.

The next question presented by appellant is that the verdict, judgment, and sentence should be reversed because the same is invalidated by the failure of the record to show any arraignment of the defendant, or that he was at any time given an opportunity to plead to the information.

This question is disposed of by the case of State v. Klasner, 19 N. M. 474-486, 145 P. 679, 682 Ann. Cas. 1917D, 824, where this court, in discussing the question of the necessity of an arraignment and plea, said:

"We believe that the correct rule was announced by the Supreme Court of the United States in the Garland Case [232 U. S. 642, 34 S. Ct. 456, 58 L. Ed. 772], and hold that appellant cannot raise, in this court, the question that she was not arraigned, where she proceeded with the trial as if she had been duly arraigned, and failed to object or in any manner call to the attention of the trial court the fact that she had not been arraigned."

In our present case, no such question was raised in the court below, and the necessity of such arraignment and

plea is here raised for the first time. We hold that going to trial without objection and without calling the matter to the trial court's attention constitutes a waiver, and that appellant cannot here raise the question for the first time.

Finding no error, the judgment of the trial court will be affirmed, and it is so ordered.

BICKLEY, C. J., and SIMMS, J., concur.

PARKER and WATSON, JJ., did not participate.