157 P.2d 236

STATE v. LONG et al.

No. 4864.

Supreme Court of New Mexico.

Dec. 20, 1944.

Rehearing Denied April 16; 1945.

James A. Hall, of Clovis, and Reed Holloman, of Santa Fe (on motion for rehearing), for appellants.

C. C. McCulloh, Atty. Gen., and Harry L. Bigbee, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

The appellants and one Ivan Bannister were charged with stealing one neat cattle, the property of one J. J. Steale. The evidence upon which the jury found the appellants guilty shows that these three men of middle age, closely associated in business and otherwise, were engaged in a joint venture. Bannister pleaded guilty.

The appellants complain first that the court erred in permitting a state's witness, Ern Hopkins, a city policeman, who arrested Compton, to testify as to a conversation with said Compton while he was under arrest without first determining that the statements made by Compton were voluntary. The precise objection was: "We object to the question unless it is shown that the defendant Compton was properly warned and that he was in custody." We have examined this testimony and in view of the fact that the defendant Compton must have known that he was under arrest, and further that the facts testified about were otherwise established, we are not at all satisfied that the court committed reversible error in permitting the witness to testify. See State v. Archuleta, 29 N.M. 25, 217 P. 619. However, in any event the error, if any, was cured. At the conclusion of the testimony of this witness, the last one to testify as a part of the state's Case in Chief, the court instructed the jury as follows:

"Gentlemen of the Jury, the statements of the last witness who testified, the city policeman, detailing the conversation with the Defendant Compton after his arrest are withdrawn from your consideration and are to be disregarded in arriving at your decision."

In 24 C.J.S. Criminal Law, § 1915 at page 971, it is said:

"The general rule is that where evidence erroneously admitted during the progress of the trial is withdrawn or excluded from

the jury, or stricken out by the court, the error is cured." Citing State v. Dendy, 34 N.M. 533, 285 P. 486.

The text continues:

"It will be presumed ordinarily that the jury considered only evidence left in the case by the court." And see State v. Dendy, supra.

The text proceeds:

"Prejudicial error. Nevertheless, striking out or withdrawing evidence does not in all cases cure the error. Where evidence is so strongly calculated to impress itself on the minds of the jury to the prejudice of accused that a subsequent withdrawal or exclusion will not remove the impression caused by its admission, the conviction must be reversed, at least where the maximum punishment, or more than the minimum, was imposed; but such instances have been declared exceptional and extreme."

As discussing this question in its various phases, see the following New Mexico cases: State v. Stewart, 34 N.M. 65, 67, 277 P. 22; State v. Tinsley, 34 N.M. 458, 462, 283 P. 907; State v. Dendy, 34 N.M. 533, 535, 285 P. 486; State v. Garcia, 46 N.M. 302, 309, 128 P.2d 459.

An attentive study of the record does not disclose any considerations which cause us to conclude that the incident is controlled by the exception rather than by the general rule, or overcome the presumption that the jury considered only the evidence left in by the court. We therefore hold that appellants' first assignment of error is without merit.

The second assignment of error presented by appellants is as follows:

"The Court erred in over-ruling the motion of defendants that the Jury be instructed to return a verdict of not guilty as to each of them, same being made immediately after the taking of testimony had been concluded."

As stated heretofore, the defendant Bannister pleaded guilty. He was called as a witness to testify on behalf of the other two defendants and told a story of having gone with the other defendants to hunt antelope or coyote and that they went to the vicinity of a farm owned by Bannister's aunt; that he, Bannister, got permission of his aunt to kill one of her cows in case the antelope hunt proved unproductive; that he, Bannister, told the defendants Compton and Long of this benevolence on the part of his aunt and Compton and Long testified that they believed it and therefore all innocently enough rendered certain aids in clandestinely disposing of the carcass of the animal slain by Bannister and accepted part of the meat in extinguishment of certain financial obligations due from Bannister to them for loans made by them to Bannister in the past and long since overdue and unpaid. Without going greatly into detail, we may say that it was a good story if true, punctured, unfortunately for defendants, here and there with inconsistent and contradictory state-

ments and improbabilities which caused the trial men to view it with incredulity.

After reading the record with care we are unable to say that the verdict is not supported by substantial evidence. Certainly we could not say that all reasonable men must conclude that this evidence is insufficient to produce conviction of defendant's guilt.

It is our conclusion that the trial court committed no error in overruling the defendants' motion for a directed verdict of not guilty.

█ The Attorney General has presented an interesting procedural question to which we feel impelled to give a definitive judicial answer since it is claimed that such answer will set at rest some uncertainties as to the conduct of criminal trials. This question is reflected in the following quotation from the Attorney General's brief:

"It is noted that there was no motion for a directed verdict following the state's Case in Chief (Tr. 87) and that immediately upon the state having rested, the defendant introduced evidence in defense and proceeded with the trial of the case without making any motion for a directed verdict. This raises a question that apparently has not been raised before in this state, which we feel should be considered in this case, and that is whether or not a defendant waives any question concerning the sufficiency of the evidence as presented in the state's Case in Chief by failing to make a motion for a directed verdict at the close of the State's Case and instead proceeds to introduce evidence in defense. This court has on numerous occasions held that if a defendant makes a motion for a directed verdict at the end of the State's Case in Chief, and upon the overruling of such motion by the trial court and the defense then proceeding to introduce testimony thereby *waives* the motion for a directed verdict previously given unless such motion is renewed at the end of the entire case." (Citing cases.)

"The theory of the above cases being based on a *waiver* of the prior motion if not renewed, would on theory seem to be applicable to a case where there was no prior motion and on the same theory it could be held that since the defense failed to make a motion for directed verdict at the end of the state's Case in Chief, they thereby waived the question concerning the sufficiency of the evidence and admitted that a case had been presented that would have to go to the jury, and by so doing the defense would have waived the question concerning the sufficiency of the evidence as presented in the state's Case in Chief and would now be estopped from questioning the sufficiency of such evidence subject only to the exception concerning fundamental error wherein this court will consider the evidence even when there has been no motion for directed verdict or a motion for a new trial. See State v. Garcia, 19 N.M. 414, 143 P. 1012 (opinion on rehearing)."

It is our view that a defendant may properly move for a directed verdict at the close of the whole case even though he has not so moved theretofore.

Judicial decisions on the precise point are not numerous, but the following support our view: In Travelers' Ins. Co. v. Randolph, 6 Cir., 78 F. 754, 758, the court said:

"The first proposition by the plaintiff is that the evidence in his behalf made a case which, in the absence of all other testimony, entitled him to a verdict, and as the defendant elected to introduce testimony in its own behalf, the court was without authority, at the close of the evidence on both sides, to direct a verdict for the defendant. * * *

"The failure of a defendant, at the close of the plaintiff's evidence, to ask a peremptory instruction, will not, of itself, preclude such a motion at the close of the whole evidence. It often occurs that the evidence on behalf of a defendant, in connection with that on behalf of the plaintiff, will justify a peremptory instruction to find for the defendant, when such an instruction would not have been authorized by the prima facie case made by the plaintiff's proofs."

In Bartalott v. International Bank, 119 Ill. 259, 269, 9 N.E. 898, 899, the court answered the question the same way with a possible qualification as follows:

"At most, so far as is now perceived, delaying the motion until after the introduction of defendant's evidence could only affect the question of costs incident to the examination of the defendant's witnesses; and this obviously would appeal only to the discretion of the court on a motion to retax costs, as in case of the examination of unnecessary witnesses. In the following cases the practice seems to have been to entertain the motion after hearing the evidence of the defendant:" Citing cases.

See also 23 C.J.S., Criminal Law, § 1145, p. 674, where it is said:

"The court is not bound to entertain a motion to direct a verdict of acquittal until the conclusion of all the evidence; a motion made after the prosecution has rested, and before accused has introduced his evidence, being addressed to the discretion of the court."

Caution should be used to read this text in connection with the note 69 cited thereto.

The judgment must be affirmed, and, it is so ordered.

SADLER, C. J., and MABRY, BRICE, and THREET, JJ., concur.