209 P.2d 525

**STATE v. MARTIN et al.**

No. 5139.

Supreme Court of New Mexico.

Aug. 29, 1949.

Joe L. Martinez, Attorney General, Wal-: ter R. Kegel, Assistant Attorney General, for appellee.

Fletcher A. Catron, Santa Fe, for appellant Henry P. Martin.

Barker & Guthmann, Santa Fe, for appellants Melisendro Lopez and Toribio Martinez.

A. L. Zinn, Dean S. Zinn, Santa Fe, for appellant Remijio Joe Martinez.

LUJAN, Justice.

Henry P. Martin, together with Melisendro Lopez, Toribio Martinez and Remijio Joe Martinez were jointly tried upon a charge of having murdered Julian Martinez and were convicted of involuntary manslaughter and sentenced to terms in the state penitentiary. From this judgment and

sentences they have appealed to this court. The parties will be referred to as they appeared in the lower court.

The tragedy, out of which arose the information and conviction of these defendants, took place in a small bar room located in the village of Chimayo, Santa Fe County. At the time there were present besides the deceased, Henry P. Martin, Melisendro Lopez, Toribio Martinez and Emilio Martinez. The ·defendant Remijio Joe Martinez was not present at the time of the wrestling and injury to deceased. The cause of death of the deceased, it is contended, was injuries to his head inflicted by being violently thrown against the door of the bar room and exposure.

The deceased, Julian Martinez, went to the saloon operated by Willie Martinez, at about 4:00 o'clock on the afternoon of March 23, 1947. He was 54 years old, about five feet six inches tall and weighed around 140 pounds and apparently in good health. Liquor was being sold at the saloon on that day, notwithstanding it was Sunday and against the State law. Every one in the saloon was drinking. About eight o'clock, Martin began to wrestle with the deceased, which match according to eye witnesses was a two round affair. The first time Martin tossed the deceased over his head at and against the base of the stove in the bar room. The deceased got up of his own volition and walked to the end of the bar

where he engaged in conversation with one of the patrons. Within a few minutes thereafter, Martin, the superior in physical strength, again grabbed the deceased and tossed him over his shoulder causing him to hit the jamb of the door with his head, thereby inflicting serious injuries and knocking the deceased unconscious. He was picked up from the floor by the defendant Martin and Emilio Martinez and placed on a bench next to some empty beer cases. He never got up nor did he thereafter utter a word. At about midnight the defendants Melisendro Lopez, Toribio Martinez and Remijio Joe Martinez put Julian Martinez in a car, took him about a mile and a half from the saloon and there placed him on the side of the highway where his body was discovered the next morning between 5:30 and 6:00 o'clock by Esquipula Martinez and others. The testimony of these three defendants and that of Emilio Martinez, a state witness, is, that Julian Martinez was dead at the time he was removed from the saloon and placed alongside the highway.

A preliminary examination was made by Dr. Dwight F. Rife, a practicing physician, the next day at about 2:30 o'clock in the afternoon. As a result of this examination, the doctor testified, that in his opinion, death had taken place from sixteen to eighteen hours previous thereto. He found a deep laceration on the left forehead above the left eye going to the bone, severe

abrasions of the skin about the left eye and left cheek bone, and that this eye was swollen and extremely discolored. On the same day at 7:00 o'clock, he made an autopsy of the body which disclosed a fractured skull, a large hemorrhagic area about the size of his palm just under the scalp laceration above the left eye, multiple brain hemorrhages entirely through the brain, a basal skull fracture above the left eye shaped somewhat like a star but under an inch in length at its widest part. He testified that, strangely, there was not a great deal of bleeding into the brain covering this location, and that other organs examined did not show anything conclusive. Also, that there was a little blood coming from the mouth and recent cuts and scratches on the fingers of his left hand. The doctor expressed the opinion that the head wounds could have been inflicted with a blunt instrument and possibly could have resulted by throwing the deceased against the wall. He also stated that, in his opinion, the blows to the head resulting in a brain injury were not sufficient, alone, to have caused Julian Martinez's death. He further testified, that in his opinion, the death of the deceased resulted from a combination of concussion, shock and exposure.

The State's theory is, of course, that the defendant Henry P. Martin inflicted the head wounds, and that while the deceased was lingering and still alive the other three defendants carried him from the bar and placed him alongside the highway, where he finally died from a combination of the injuries and exposure.

The defendant, Martin, interposes the defense that he did not inflict the wounds which caused the death of the deceased and that deceased was still alive at the time the other defendants removed him from the saloon and placed him alongside the highway where he was found dead.

The defendant, Remijio Joe Martinez puts in the defense that at the time he left the saloon the deceased was still alive and that when he returned to the saloon he was dead. That he had been removed from the saloon while still alive and placed on a wood pile outside the saloon where he died from the wounds and exposure.

The defendants, Melisendro Lopez and Toribio Martinez, set up the defense that Julian Martinez was dead at the time they, together with the defendant Remijio Joe Martinez, removed his body from the bar room and placed it alongside the highway. That the body was not removed from a wood pile but that all three removed it from the saloon.

The trial was in many respects more of a contest between the defendants themselves than between the State and the defendants. The State frequently stood by and witnessed a combat in which the defendants attempted to destroy each other. This is indicated by

the opening statements made to the jury by respective counsel for these defendants.

At the conclusion of the state's case in chief the defendant Martin, rested and moved the court for a directed verdict. His motion was overruled and thereafter the defendants Lopez and Toribio Martinez took the stand. Each of these defendants gave damaging testimony against Martin. He attempted to cross examine each of them but was denied the privilege of doing so unless he would withdraw his announcement that he had rested his case. Martin declined to make such announcement, and assigns this action of the court as error.

We have this situation: Martin did not desire to offer any evidence in his behalf and so announced to the trial court, yet on account of his refusal to meet the condition imposed he was denied the right to cross examine his co-defendants who had given damaging testimony against him.

■ Article 2, Section 14, of our constitution provides that a defendant has the right to be confronted with the witnesses against him, and this means that he not only has the right to look upon such witnesses but to cross examine them. Tate v. Smith, 86 Ala. 33, 5 So. 575; Wray v. State, 154 Ala. 36, 45 So. 697, 15 L.R.A.,N.S., 493, 129 Am.St.Rep., 18, 16 Ann.Cas. 362. While the extent of the cross examination is largely within the discretion of the trial court it is, nevertheless, a valuable right

and it cannot be so restricted as to wholly deprive a party of the opportunity to test the credibility of a witness. State v. Talamante, 50 N.M. 6, 165 P.2d 812. See, also, State v. Mannion, 19 Utah 505, 57 P. 542, 45 L.R.A. 638, 75 Am.St.Rep. 753. Where two or more persons are informed against or indicted jointly, and one takes the stand in his own behalf and gives testimony clearly incriminating the other, the latter may cross examine him. State v. Crooker, 123 Me. 310, 122 A. 865, 33 A.L.R. 821, and the annotation following at page 826.

In addition to being denied the right to cross examine his co-defendants who had testified against him, Martin was also denied the right to make any objections to questions asked unless he would withdraw his announcement that he had rested.

■ Webster's New International Dictionary, 2nd. Ed. p. 2124, defines "rest" in law as follows:

"In practice, to bring to an end voluntarily the introduction of evidence, the right to introduce fresh evidence, except in rebuttal, being thereupon lost."

■ In this case Martin's statement that he rested meant that he had no testimony to offer, but it did not mean that he must, sit idly by while two other defendants gave damaging testimony against him and be denied the right to cross examine or to interpose timely objections against, questions being asked of others who might

testify in the case. We hold that the action of the trial court in this regard was error and on account thereof he must be granted a new trial.

The remaining defendants' contention under Point 1, is to the effect that the verdict of the jury is not supported by substantial evidence. In passing upon the sufficiency of the evidence to support a verdict this court is at a greater disadvantage than the trial court, for while it is possible for the transcript to contain all the testimony it is likewise impossible to contain all of the evidence. A witness's testimony, when transcribed on paper and read by some one not present at the trial, may be most plausible, yet, his manner and demeanor on the witness stand may convince the jury and the trial court of an entire lack of credibility. The trial scene cannot be transferred to a reviewing court and in many cases the manner and demeanor of a material witness while testifying is the moving factor in reaching a verdict. In fact, the trial court gave the usual charge in this case, that in considering the question of the credibility of witnesses, the jury may take into consideration the manner and demeanor of any witness on the stand, and that the jury should in arriving at their verdict determine from the whole of the evidence where the truth lies, and bring to bear upon it the exercise of common sense and judgment as reasonable men.

It would serve no good purpose to detail the voluminous evidence adduced at the trial. Suffice it to say that we have carefully read the entire record and find facts and circumstances in evidence sufficient to support a verdict of guilty against the defendants, Melisendro Lopez, Toribio Martinez and Remijio Joe Martinez that they removed Julian Martinez from the saloon where he had been seriously injured and placed him on the side of the highway while he was still alive, and that his death resulted from the head injuries and exposure.

As stated the verdict is supported by substantial evidence, it will not be disturbed here, although we might have reached a different conclusion if we had been the triers of facts.

Under Point 2 of the brief of Remijio Joe Martinez and point 4 of brief of Melisendro Lopez and Toribio Martinez, these defendants argue that the court erred in denying their motions for dismissal and judgment of acquittal notwithstanding the verdict. We are not impressed by their argument. Many questions of fact are involved in deciding such a motion and a trial judge is necessarily in a better position to pass upon the question than this court. The evidence presents two separate and distinct lines of testimony. Doctor Rife, a witness for the state relates a set of facts showing that Julian Martinez did not

die solely from the injuries to his head, but that his death was accelerated by exposure, and the testimony of the defendants and that of the State witness, Emilio Martinez, who is related to two of these defendants, is equally positive that the deceased was dead when removed from the saloon and placed alongside the highway. Assuming that this motion could have been decided the other way, the facts remain that it cannot be held that an abuse of discretion clearly appears, or that the ruling of the court is without substantial support in the record. There was sufficient evidence to take the case to the jury, and it is well settled in this jurisdiction that the court should not direct a verdict where there is any substantial evidence to support, or tending to support, the charge. State v. Wilson, 25 N.M. 439, 184 P. 531; State v. Taylor, 26 N.M. 429, 194 P. 368; State v. Ulibarri, 28 N.M. 107, 206 P. 510; State v. Renner, 34 N.M. 154, 279 P. 66.

Under points 2 and 3 of the brief of defendants Melisendro Lopez and Toribio Martinez and points 4, 5, 6 and 7 of brief of defendant, Remijio Joe Martinez, it is insisted that the verdict returned by the jury is wholly contrary to, and totally ignores, instructions Nos. 12, 14, 16 and 17, and, that being true, the judgment should be reversed, although there is no claim that these instructions are erroneous,

nor were there any objections made or exceptions taken as to them.

Instructions No. 12 reads as follows:

"If you should believe from the evidence, beyond a reasonable doubt, that Henry Martin caused the death of Julian Martinez in the commission of an unlawful act not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection then you shall acquit the defendants Melisendro Lopez, Toribio Martinez and Remijio Lopez."

While the instruction upon this point is not, perhaps, as clear as it might be, the instruction, in effect, told the jury that if they believed beyond a reasonable doubt that Henry Martin alone, caused the death of Julian Martinez in a manner constituting involuntary manslaughter under our statutes, then they should acquit the other defendants.

We have carefully considered the other instructions which the defendants claim that the jury ignored and find no merit to their argument. When there is a series of instructions, as there was here, presenting different theories of the case, it is the duty of the jury to consider all of the instructions as a whole. Victor American Fuel Co. v. Melkusch, 24 N.M. 47, 173 P. 198; Federal Reserve Bank of

Dallas v. Upton, 34 N.M. 509, 285 P. 494. And when so read and considered, they did not have the unqualified effect claimed for them by counsel. While instruction No. 12, authorized a finding of not guilty for the defendants, Melisendro Lopez, Toribio Martinez and Remijio Joe Martinez, if the jury believed that Julian Martinez died solely from injuries caused by the defendant Henry Martin, the other instructions authorized a finding that if they believed that the deceased was alive at the time he was removed from the saloon and placed alongside the highway, and there died from the injuries inflicted by the defendant Henry Martin together with exposure to the elements, then these defendants would be equally guilty as principals. In Brumagin v. Bradshaw, 39 Cal. 24, the court said:

"It is possible to determine whether a verdict is contrary to an instruction only when the evidence on a point covered by the instruction is without conflict and fails to show a set of facts, which, under the instruction, would warrant the verdict reached. Where the evidence on that point is conflicting, but sufficient to support a finding of fact which, under the instruction, warrants the verdict, it must be presumed that the jury did make such a finding, and hence its verdict is not contrary to the instruction and not against the law."

The verdict of the jury indicated that it believed the evidence of the State and concluded that Julian Martinez was still alive when he was removed from the saloon and placed alongside the highway and that he died as a result of the head injuries inflicted by Henry Martin together with exposure to the elements of the weather brought about by the acts of these three defendants, and this evidence if believed by the jury is sufficient to sustain the verdict under the charge given. Consequently, it cannot be said to be contrary to such instructions.

It is finally contended by these defendants under their points 3 and 5 that the court erred in denying their motion for a new trial. The motion is based upon the same grounds as set forth in their motion for dismissal, and as the principles of these have already been discussed, it is not necessary to again advert to them. It follows from what has heretofore been said that the lower court did not so err.

The judgment should be affirmed as to the defendant Melisendro Lopez, Toribio Martinez and Remijio Joe Martinez, and reversed as to the defendant Henry Martin with directions to the district court to grant him a new trial. It is so ordered.

BRICE, C. J., and SADLER, McGHEE, and COMPTON, JJ., concur.