**225 P.2d 150**

**STATE v. SANDERS.**

**No. 5303.**

Supreme Court of New Mexico.

Dec. 9, 1950.

C. C. Davidson, Tucumcari, for appellant.

Joe L. Martinez, Atty. Gen., Hilario Rubio, Asst. Atty. Gen., for appellee.

SADLER, Justice.

The defendant was convicted of common law rape and sentenced to the state penitentiary for a term of years. He prosecutes this appeal from the judgment and sentence so pronounced upon him.

The victim of the assault was a young woman twenty-two years of age residing with her parents at Clovis, New Mexico, at which city she was employed in a produce store. On the evening in question, October 6, 1949, at the invitation of a girl friend she went on what is known as a "blind date" to the neighboring town of

Portales in Roosevelt County in which county the offense charged took place. A "blind date" is one in which the boy and girl who are to be each other's companion for the evening have never met before, or supposedly have not. The prosecutrix had known the girl who invited her on the blind date for about three years.

The younger brother of defendant, Ray Sanders, was employed in Clovis and the girl friend who invited prosecutrix to go on the "blind date" for the evening was to be his date. The two traveling in a coupe proceeded to the home of prosecutrix in Clovis after the dinner hour on the evening of Thursday, October 6, 1949, and after picking up prosecutrix proceeded to Portales where they arrived about 9 p. m., stopping at a filling station operated by defendant's father where he was employed. Here they awaited defendant until ten (10:00) o'clock when he got off from work, following which defendant went by his home to bathe and change clothes. All then went out together looking for some spot where they might dance. They paused momentarily at a place known as the "Wagon Wheel" in Portales. Because they found no friends there they proceeded to an establishment some distance from Portales on the Roswell highway beyond a town known as Kenna. Here they found tables, a bar and as well room for dancing.

Alighting from their car at this place, the four entered and ordered drinks. The two brothers had each consumed a can of beer at their father's filling station before leaving Portales. Between two and three hours were spent in dancing at this tavern, during which time all members of the party did some drinking. Although prosecutrix never before this occasion had drunk an alcoholic beverage, at the urging of other members of the party she drank some whiskey in a "coke," also a gin fizz. While there, the defendant consumed "quite a bit of beer and whiskey both."

The party had traveled from Portales to the tavern and dance hall beyond Kenna in a two-door Chevrolet sedan belonging to the defendant. On the way out from Portales the defendant and prosecutrix rode in the back seat of the car, with Ray and his date occupying the front seat and Ray doing the driving. During the trip out, the defendant had not mistreated prosecutrix in any way nor made improper advances to her. On the return trip Ray, the brother, and his date, continued to occupy the front seat and he continued to drive, notwithstanding he was pretty well intoxicated by this time. Soon after starting out on the return trip to Portales, however, the defendant, who like his brother was intoxicated, began making efforts to have intercourse with the prosecutrix. She called on

her girl friend on the front seat for assistance. The extent of her aid, however, was to request defendant to leave prosecutrix alone. The defendant ignored this admonition and at his request the brother, Ray, who was driving, stopped the car. The defendant persisted in his efforts to have intercourse with prosecutrix. Finally, he became so rough with her that she seized a bottle of gin up near the rear window of the car, which had been purchased before leaving the bar and broke it over defendant's head. She wielded it with such force that it knocked him out momentarily.

It was at this point the prosecutrix, thinking she might the more easily escape if out of the car, suggested that they get out of the car. The brother and his date had gotten out of the car when it stopped and walked down the road for some distance. However, they had returned and were in the car when the prosecutrix struck defendant over the head with the bottle of gin and as well when, as already stated, she suggested that defendant and she get out of the car. In line with her stated reason for wishing to leave the car, namely, as affording a better chance to escape the defendant, she began running immediately upon alighting from the car. The defendant, apparently anticipating this act on her part, pursued and soon overtook her. Seizing her by the right arm and twisting it he forced her through a barbed wire fence which parallelled the highway and into a pasture alongside it.

Then forcing her to accompany him out into the pasture for some distance from the highway, he shoved or threw her to the ground and forcibly had intercourse with her repeatedly during the period of more than an hour he kept her there. During his attack the prosecutrix cried out three times but this brought no aid from the other couple who claimed not to have heard her. It would serve no good purpose to recite the sordid details of defendant's acts and conduct in forcing the prosecutrix, who admittedly was a virgin, to have intercourse with him; nor to quote the callous language employed by him in stating to his brother and the latter's girl companion the proof of her virginity, following the rape committed by him. Suffice it to say that the facts stated and additional facts in evidence including complaint by prosecutrix to her mother upon arriving home, the testimony of physicians who examined her the day following, the contrasting strength of the two, she weighing only ninety-three (93) pounds and he one hundred forty-five (145), and other corroborating circumstances, all afford ample evidence to support the verdict of guilty which the jury returned into open court at the close of the trial.

The defense was that the prosecutrix consented voluntarily to intercourse with her

by the defendant. He so testified and insists the trial court erred in overruling his request for an instructed verdict interposed both when the state rested and renewed when all the evidence was in. The principal contention in support of this claim is that the story of the prosecutrix is so inherently improbable that the jury should not have been given an opportunity to pass upon its credibility. Chiefly, it was because the prosecutrix testified she agreed to a date with him at a wrestling match the following night and failed to make complaint at two points where the party stopped between the place of the offense and the delivery of prosecutrix at her home in Clovis about 4:30 a. m. that night. Also, her response given below to a query by the girl companion of defendant's brother upon returning to the car with defendant after the offense as to whether they, prosecutrix and defendant, had their differences settled, to-wit: "I told her we was all settled."

As to the date agreed to for the following night, prosecutrix stated that throughout his acts of intercourse with her defendant kept importuning her for a date for the wrestling match in Clovis the following night and, having ignored her repeated pleas to stop his attacks and leave her alone, she thought by agreeing to the date she might get him to cease his attacks and leave her alone. It did have exactly that effect.

It is interesting to note in this connection that defendant failed to show up the following night for the date which he admitted having made with her. In response to numerous inquiries as to why he failed to do so, his only response was: "I didn't want to."

In explaining her failure to make complaint at the two places in Portales where the party stopped for short periods on the way back to Clovis from the point of attack, the prosecutrix stated the first stop was at a filling station for fixing a tire, about 2:30 a. m., where there were only two attendants, both males; and that the other stop was at the "Cozy Corner Cafe" where all ordered food, she ordering a hamburger and a glass of buttermilk, neither of which she touched. She further stated there were a number of people in the cafe but that all present were men except the two waitresses on duty. Asked why she said nothing to those in the cafe about the attack upon her, the prosecutrix replied they were all strangers and that she was frightened and knew not what to do. It was also in evidence from her girl companion on this occasion (a hostile state's witness) that prosecutrix began to cry before reaching Portales on the return trip to Clovis; that as soon as she and prosecutrix were apart from the two boys through a visit to the women's rest room, the prosecutrix informed her

defendant had had sexual intercourse with her; that she, the girl companion, assisted prosecutrix in picking grass and dirt out of the latter's hair and admitted apologizing to her for having secured the date for her with the defendant, who the evidence disclosed was a married man, a fact unknown to prosecutrix when she accepted the date with him.

The jury heard and considered all the evidence, that which supported the story of the prosecutrix and as well such as tended to cast doubt on it, and concluded the defendant was guilty as charged. The jurors, no doubt, were mindful throughout their deliberations of the fact that the prosecutrix, in efforts to resist defendant's attack, had broken a bottle of gin over his head; also of the disparity in strength between the parties, the defendant being a healthy young man 29 years of age weighing 145 pounds, as against the 93 pounds shown to be the weight of prosecutrix. They must have recalled, too, testimony that her undergarments were torn and disheveled and her limbs bruised in proof of rough treatment at the hands of defendant. They were not compelled to view her failure to make complaint to strangers at the two places where the party stopped on the way home as discrediting her testimony. This went only to its weight. 44 A.J. 956, § 86; State v. Ellison, 19 N.M. 428, 144 P. 10; State v. Bell, 235 Iowa 767, 16 N.W.2d 218; People v. O'Sullivan, 104 N.Y. 481, 10 N.E. 880, 58 Am.Rep. 530. She did confide to her mother what had taken place soon after reaching home. That there is substantial evidence to support the verdict seems in no way doubtful.

In such circumstances it is not error to deny a motion for an instructed verdict of acquittal. State v. Renner, 34 N. M. 154, 279 P. 66. If the testimony of prosecutrix is so inherently improbable as to be unworthy of belief then, of course, a verdict of guilty cannot be said to have substantial support in the evidence. We are unable to overturn the verdict upon that ground in the case at bar. State v. Richardson, 48 N. M. 544, 154 P.2d 224.

It is next said the trial court erred in refusing to give defendant's specially requested instructions 1 and 2. These two instructions proposed by the defendant, considered together, amount to a request on the court to give an instruction on his theory of the case, namely, that the prosecutrix had voluntarily consented to the intercourse charged to have taken place with defendant. They will be so considered by us since unquestionably they were so treated by defendant and the trial court.

At the outset we may eliminate from consideration defendant's specially requested instruction No. 2 as not correctly stating the law. In substance, it charged the jury, among other things, that if it

should find from the evidence that defendant had carnal knowledge of the prosecutrix, then it would be presumed to have been with her consent until the state proved beyond a reasonable doubt it was not voluntary on her part. Now, we know of no such presumption in the law. True enough, the defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt. But the operation of this presumption does not create a presumption of a want of chastity in a female. Indeed, she is presumed to be chaste. But it would be a dangerous practice for the court in its instructions to begin to match these presumptions, the one against the other, in the trial of a defendant charged with forcible rape. Our conclusion is that the intercourse charged being an undisputed fact in the case, no presumption arises against the female that it was consented to by her, notwithstanding the presumption of innocence attending a defendant throughout the trial. It is simply a matter open for proof unaided by a presumption against the chastity of the prosecutrix.

▇▇▇▇▇ Turning then to claimed error in the court's refusal to give defendant's specially requested instruction No. 1 presenting his theory of the case. The trial court treated these two tendered instructions as a request to the court to apply the law to his theory of the case, as defendant intended they should be treated. Specially requested instruction No. 2 was properly refused because it was erroneous in the respect just pointed out. We accept No. 1, however, as being a proper instruction on defendant's theory of the case. What happened to it? The trial court substituted for the requested instruction one in its own language, as it had the right to do, set out in paragraph 10. The defendant accepted it, without objection, expressly stating that he considered it substantially the equivalent of his own. In order that defendant's position may be understood, we shall set out paragraph 10 of the court's instruction, given in lieu of the one requested by defendant, to be followed by the colloquy between court and defendant's counsel touching this paragraph of the instructions and his requested instructions Nos. 1 and 2. Paragraph 10 of the instructions given follows: "To constitute the crime of rape, the will of the female alleged to have been outraged must have been overcome either by force, violence or fear, or by the operation of two or more of those causes. If she consents in the least during any part of the act, there is not such an opposing will as the law requires to convict of rape, and if you believe from the evidence, beyond a reasonable doubt, that the defendant had sexual intercourse with (prosecutrix), but that at any time during the act she gave her consent to the act, then you will not be authorized to convict the defendant of rape, unless you further believe from the evidence, beyond a reasonable doubt, that her

consent was obtained by force or violence or by fear induced by threats of defendant of great bodily harm or injury to her unless she did consent to the act."

The colloquy between court and counsel for defendant is next set out, to-wit:

"The Court: Does the State have any requested instructions?

"Mr. Rowley: We have none.

"The Court: Does the State have any objections to the instructions given by the Court?

"Mr. Rowley: No sir.

"Mr. Davidson: Nine is the precautionary instruction?

"The Court: That's right, uh-huh. I think that has been customary to give that in every rape case in this jurisdiction, so far as I know.

"Mr. Davidson: Ten, I don't believe that is as full as the instruction I requested, but then, I think it is substantially. Yes, I believe that covers it.

"The Court: Do you have any additional requested instructions Mr. Davidson?

"Mr. Davidson: No, I have no additional instructions.

"The Court: Any objections to the instructions as given?

"Mr. Davidson: No objection.

"The Court: Any exceptions to the Court's refusal to grant the tendered instructions?

"Mr. Davidson: Well, I made an exception to that, I will except to the refusals to give the instructions one and two."

■ We begin consideration of this claim of error with a recognition of the well established rule that a defendant charged with crime is entitled to have an instruction given on his theory of the case and that it is error to refuse a request so to instruct. State v. Martinez, 30 N.M. 178, 230 P. 379; State v. Shedoudy, 45 N. M. 516, 118 P.2d 280. In so far, therefore, as any claim of error argued before us either in defendant's brief, or orally at submission, touching action of the trial court in refusing his requested instructions is concerned, the defendant is faced in the record by an express consent announced in open court, as to sufficiency of paragraph 10 of the trial court's instruction in presenting his theory of the case.

■ May he, therefore, now secure a reversal for refusal of his requested instructions by reason of any presently claimed insufficiency in the one given? Even though, by a "catch all" exception to the refusal of his requested instructions, he may have sought to preserve for consideration here a challenge to sufficiency of the instruction given in lieu of his own, the sufficiency of which he had admitted be-

low? We think not. One may not in the same breath both affirm and deny, or blow hot and cold. Put in still another way, defendant may not "eat his cake and have it, too." The only reason here assigned in support of the claimed error in refusing defendant's tendered instructions is that they more fully present his theory of the case than does the one given by the trial court in lieu of them. Yet, below he formally expressed satisfaction with the one given as being substantially what he had requested. In such circumstances, we can see no error in the trial court's refusal of the tendered instructions. State v. Miller, R.I., 142 A. 662.

So much for any claim of error pointed out by defendant in the refusal of his specially requested instructions. The claim is not well taken. But there is suggested error in paragraph 10 of the trial court's instruction, given in lieu of defendant's specially requested instructions, in a particular unnoticed either by his counsel or the trial court. In view of the fact that, for reasons to be given later, we hold defendant in no position to complain of the error, we perhaps would permit it to go unnoticed here save for the possibility, if not likelihood, that the trial court in another similar case may employ the same instruction. Hence, we shall discuss it.

Paragraph 10 of the trial court's instruction, which we have quoted in full herein-above, omitting parts of it, contains the following language, to-wit: " * * * and if you believe from the evidence, beyond a reasonable doubt, that the defendant had sexual intercourse with (prosecutrix), *but that at any time during the act she gave her consent to the act,* then you will not be authorized to convict the defendant of rape," etc. (Emphasis ours.)

Since belief "beyond a reasonable doubt" of accused's affirmative defense of consent, by the manner in which this sentence is framed, is made a condition of acquittal, according to the suggested interpretation of the foregoing language by one of the justices in conference, error said to be fundamental in character inheres in the instruction. However, counsel for defendant let it go by unnoticed and not only made no objection to it but actually formally announced it was acceptable. As a result, defendant's counsel chanced a verdict of acquittal, though we are satisfied the failure to call any error in the instruction to the attention of the trial court was due to inadvertence and not to design. There can be not the slightest doubt but that, had counsel pointed out the suggested error, any defect in the instruction would have been corrected. Hence, to permit it to be made the basis of a reversal here, save as an exceptional case in which we intervene on the ground of fundamental error, State v. Garcia, 19 N.M. 414, 143 P. 1012, would be to put a premium either on chicanery or care-

lessness, as the case might be. A defendant's counsel, if so disposed (and we acquit present counsel of the implication), could close his eyes to the error. Then, if the hoped for acquittal failed to materialize, he would have a chance at acquittal of his client before another jury through award of a new trial here for an error which could have been avoided, had it been called to the attention of the trial court.

Not all of the justices concurring in this opinion agree that this instruction, properly read, informs the jury they must believe defendant's affirmative defense of consent on the part of prosecutrix *beyond a reasonable doubt,* as a condition to acquittal. All confusion in the matter in the respect suggested might have been avoided if the italicized portion of the instruction quoted last above had been changed to read "but further believe, or entertain a reasonable doubt on the subject, that at any time during the act she gave her consent to the act," etc. The writer is of opinion that from the standpoint of grammatical nicety of expression there is basis for the suggested error in the instruction. He does not feel, however, that the defendant is in any position to complain of it here for the first time.

There is also a view in the ranks of the majority that the instructions, when read and considered as a whole, so repeatedly inform the jury every material allegation of the charge must be proved beyond a reasonable doubt; that defendant must be proved guilty beyond a reasonable doubt; and is attended by a presumption of innocence throughout the trial, that the jury could not have been misled by employment of the unfortunate language underscored in the quotation last above. Cf. State v. Parker, 34 N.M. 486, 285 P. 490. Even in this very paragraph of the instruction, immediately following the objectionable language, there is other language tending to neutralize it and put "belief beyond a reasonable doubt" as to consent on the state where previous instructions place it. Note the closing language of the instruction. But it is never safe in any case to have to leave it to the language of other instructions to clear up confusion on so vital a matter as the error suggested.

This leaves, then, for further consideration only the question whether, even if the instruction mentioned be deemed erroneous in the respect suggested, we should intervene to award a new trial under the doctrine of fundamental error as announced in State v. Garcia, supra, and subsequent cases following it. We are convinced we should not. The doctrine of fundamental error is to be resorted to in criminal cases for protection of those whose innocence appears indisputably or open to such question that it would shock the conscience to permit a conviction to stand. In State v. Garcia, supra, we intervened on an application of this doctrine to

protect from imprisonment in the penitentiary a defendant shown by the evidence to have been lying unconscious on the floor of a saloon at the time of the commission of the homicide with which he was charged. In our opinion in that case we laid down a test, later approved in State v. Garcia, 46 N.M. 302, 128 P.2d 459, 462, and in Butler Paper Co. v. Sydney, 47 N.M. 463, 144 P.2d 170, which we deem applicable here. We said: "The restrictions of the statute apply to the parties, not to this court. This court, of course, will exercise this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims, nor will we consider the weight of evidence if any substantial evidence was submitted to support the verdict. *If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court to the invasion of their legal right before we will notice them here."* (Emphasis added.)

 This does not impress us as a case calling for an application of the doctrine of fundamental error. The jury was called upon to say whether the prosecutrix, a young girl whose virginity was established, accepting a date with a young man thought to be single whom she had never seen before, who admittedly resisted his improper advances to the point of rendering him momentarily unconscious by a blow on the head with a bottle of gin while in the car and left it to flee on foot in an effort to escape him, and when overtaken continued to resist to the limit of her strength, finally succumbed and voluntarily consented to intercourse with the stranger she had met for the first time only a few hours before. It was the jury's province to say whether the story related by the prosecutrix was true or false. Its verdict affirms a belief in it. It does not impress us as being so inherently improbable as to be unworthy of belief. State v. Long, 49 N.M. 57, 157 P.2d 236; State v. Nuttall, 51 N.M. 196, 181 P.2d 808.

Under the situation here present, the defendant loses any chance to have us intervene on the ground of fundamental error in the instruction, when he fails to sustain his claim that the story of prosecutrix was so inherently improbable as to be unworthy of belief. Ironically, from his standpoint, if that claim of error had prevailed, he would not need the aid of fundamental error to get a new trial. That alone would have given him one.

Finding no error, the judgment of the district court will be affirmed.

It is so ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., dissenting.

McGHEE, Justice (dissenting in part).

Although the defendant's attorney did not sense the vice in instruction No. 10, and consented that it might be given in lieu of his requested instruction No. 1, I am unable to concur in the majority opinion.

The defendant admitted the act of intercourse and defendant on the ground the prosecutrix had given her consent. Under the record in this case such defense was debatable. Even with instruction No. 10, it took some time for the jury to reach a verdict.

In State v. Garcia, 46 N.M. 302, 128 P.2d ꞏ459, 462, Mr. Justice Zinn said: "Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law. Also, there may be such a case, as the Garcia case, supra (19 N.M. 414, 420, 143 P. 1012), which would so shock the conscience of the court as to call for a reversal. When such a case is presented the court on its own motion would cut through all rules of appellate practice and procedure to insure justice."

We are not advised as to the parentage of this flagrantly erroneous instruction which told the jury that the defendant had to establish his defense of consent by the evidence beyond a reasonable doubt. Surely it was not taken from a form book or any reported case, and I cannot believe that the trial judge appreciated its effect when he gave it with the other instructions. This was the only instruction in which an attempt was made to cover the defendant's theory of the case, and its effect must have been devastating on his defense.

This instruction so shocks my conscience that I favor cutting through our rules of appellate practice and procedure, reversing the case and giving this defendant a fair chance to obtain his liberty at another trial.

I dissent.