CHARLES J. BAKER v. STATE OF NEBRASKA.

FILED MAY 5, 1910.   No. 16,522.

</div>

1. **Bigamy**: INFORMATION: SUFFICIENCY. In a prosecution for bigamy,
   the allegation in the information that the defendant married a
   person named at a specified time and place, and then and there
   had the said (naming her) for his wife, is a sufficient allegation
   of the first marriage, without the further allegation that the
   parties then had "a legal right to marry."

2. ———: EVIDENCE: PREJUDICIAL ERROR. In a prosecution for bigamy, when it appears that the first wife is still living, it is erroneous to exclude evidence offered by defendant tending to show that prior to his second marriage he was credibly informed that his first wife had obtained a divorce, and that he had sufficient reason to believe and did believe the information so received, and relied thereon in good faith.

ERROR to the district court for Cass county. LEANDER M. PEMBERTON, JUDGE. *Reversed.*

*A. N. Sullivan*, for plaintiff in error.

*William T. Thompson, Attorney General,* and *George W. Ayres, contra.*

SEDGWICK, J.

The defendant, who is the plaintiff in error here, was convicted of the crime of bigamy in the district court for Cass county. It was charged in the information that "on or about the 22d day of May, A. D. 1883, in the county of Lake, in the state of Ohio," the defendant "did then and there marry one Abigal L. Shaw, and her, the said Abigal L. Shaw, then and there had for his wife, and * * * being so married to the said Abigal L. Shaw, as aforesaid, afterwards and during the life of the said Abigal L. Shaw, his wife", did marry one Lillian L. Vroman.

1. It is first contended that the information is insufficient in that it "does not allege that the parties to the first marriage had any legal right to marry." There has been some conflict in the authorities as to the manner of alleging the first marriage in prosecutions for bigamy, particularly with regard to the formality with which the particulars of such marriage should be set forth in the information. Few courts have gone so far as to hold that it is necessary to allege specifically that the first marriage was a legal one. In *Kopke v. People,* 43 Mich. 41, the court, by Campbell, J. said: "An averment setting out the first marriage must be presumed to intend a lawful marriage, and the prosecution must prove one." This

view of the law has been practically adopted in this state. *Hills v. State*, 61 Neb. 589. We think that this holding is well supported by the authorities, and the objection, therefore, to the information is not well taken.

2. The defendant testified in his own behalf, and was asked by his counsel whether he had received a letter from his daughter in regard to his wife having obtained a divorce. Upon objection he was not allowed to answer this question, and thereupon he offered to prove by his own testimony that after he and his first wife had separated, and while he was living in Nebraska and his wife was living in Ohio, he received a letter from his daughter, who was also living in Ohio, in which she informed the defendant that his wife had obtained a divorce. He also offered to prove that he relied upon the information so obtained and believed that it was true, and that the letter in question had been destroyed. There were some informalities in making these offers, and perhaps there were technical reasons that might have justified the court in sustaining the objection to the questions and offers. No matters of that kind, however, are now insisted upon by the state, and upon the whole record it would seem that the court intended to exclude all evidence of any information to the defendant that his wife had procured a divorce, or that the defendant had ground to believe and did believe that the marriage relation had been dissolved.

When a defendant is on trial charged with a crime and offers evidence tending to prove a defense which would require his acquittal of the crime charged, the court cannot exclude such evidence on the ground of its weakness or insufficiency. It is not the province of the court to determine that the evidence offered by the accused is weak and, if received, would not be sufficient to prove the point to which it is directed. The jury must pass upon the weight and sufficiency of the evidence; and if the evidence is competent and tends to prove a fact which, if established, would constitute a defense, it must

be received and submitted to the jury with proper instructions. The trial court having excluded evidence tending to show that the defendant had reason to believe and did believe that his former wife had been divorced, the question is whether the statute is absolute and admits of no defense where there has been a second marriage, except the defense that the former wife was dead or in fact divorced before the second marriage.

If one of the married parties dies or there is a legal divorce, the survivor thereby becomes single, and under our laws has the same right to contract marriage that he had to contract his first marriage. The question presented is, whether, if one is mistaken in regard to the death or divorce of his wife, and acting under that mistake contracts a second marriage, the statute is absolute and he is guilty of crime without regard to the grounds of his belief or his good faith in contracting the second marriage. In *Reynolds v. State,* 58 Neb. 49, the information charged that the defendant was married to one Jennie Ford in 1895, and in 1897 was married to one Lizzie Caulk. One of the principal questions considered in the case was whether there was a valid marriage with Jennie Ford. It was shown that Jennie Ford was married to Frank Ford in 1884, and, of course, if Frank Ford was living at the time of her alleged marriage with the defendant she could not then become the wife of the defendant. Upon the trial she was allowed to testify that she had received a letter from some one in Kansas City informing her of the death of the said Frank Ford. The trial court denied the motion to strike out this evidence, and in the opinion of this court it was stated that the motion should have been sustained. This court said: "The witness was not on trial; her intent, whether criminal or innocent, was not in issue, and, therefore, her belief touching the contents of the letter was wholly immaterial." Some of the language used in that opinion was quite appropriate to the question there being discussed, but wholly irrelevant to the question now under

consideration.  By the second paragraph of the syllabus the question presented in this case was specially reserved, and not decided.

Under statutes like ours the authorities are not entirely in harmony.  The statute of Alabama, like ours, made it criminal for any person having a former wife or husband to marry another in that state.  It made an exception in favor of one who has procured a decree of divorce, "the decree allowing him or her to marry again", and an exception like ours: "Any person who, at the time of the second marriage, did not know his or her former husband or wife was living, if such husband or wife had been absent for the last five years preceding such marriage." Under that statute the court held (*Jones v. State*, 67 Ala. 84) that "the only criminal intent, which is of the essence of the offense, is the intent to marry the second time, not knowing the husband, who had been absent only one year, to be dead", and the court said in the opinion: "Whoever marries the second time, having a former husband or wife living, absent for a less period than five years, violates the statute, and is subject to punishment." The opinion quotes from and apparently follows *Commonwealth v. Mash,* 7 Met. (Mass.) 472.

In *State v. Zichfeld,* 23 Nev. 304, 62 Am. St. Rep. 800, the court quoted from the language of Shaw, C. J., in *Commonwealth v. Mash,* apparently with approval, as follows: "Whatever one voluntarily does, he, of course, intends to do. If the statute has made it criminal to do any act under peculiar circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it." The Nevada court, however, was not then considering the point herein discussed.  The questions before the court in that case were, whether a marriage is valid although the statutory provisions in regard to solemnization have not been complied with, and, can married persons divorce themselves by their contract for that purpose.  The case therefore does not afford much assistance in determining the present question.

In *Commonwealth v. Mash,* 7 Met. (Mass.) 472, the trial court instructed the jury "that the defendant's ignorance that her said husband, Peter Mash, was alive, and her honest belief that he was dead, constituted no legal defense." The facts in this case are briefly stated in the opinion by Mr. Chief Justice Shaw, who, in referring to the instruction of the trial court, said: "The rule, as thus laid down, in effect was, that a woman whose husband suddenly left her without notice, and saying, when he went out, that he should return immediately, and who is absent between three and four years, though she have made inquiry after him, and is ignorant of his being alive, but honestly believes him to be dead, if she marries again, is guilty of polygamy." The eminent chief justice then stated the substance of the statute defining the crime, and declared the law of that state, as follows: "It appears to us, that in a matter of this importance, so essential to the peace of families and the good order of society, it was not the intention of the law to make the legality of a second marriage, whilst the former husband or wife is in fact living, depend upon ignorance of such absent party's being alive, or even upon an honest belief of such person's death. Such belief might arise after a very short absence. But it appears to us that the legislature intended to prescribe a more exact rule, and to declare, as law, that no one should have a right, upon such ignorance that the other party is alive, or even upon such honest belief of his death, to take the risk of marrying again, unless such belief is confirmed by an absence of seven years, with ignorance of the absent party's being alive within that time. It is analogous to other provisions and rules of law, by which a continued absence of a person for seven years, without being heard of, will constitute a presumption of his death." The history of the enactment of their statute is given, and the conclusion reached is based upon the intention of the legislature in enacting the law, and this intention is derived, to some extent at least, from changes made in the pro-

posed legislation while the matter was under considera-
tion by the legislature. The law so announced is con-
trary to the rule finally established in England after
much consideration and debate. The reputation and rec-
ognized ability of the renowned author of that opinion
have undoubtedly had much influence with those Ameri-
can courts who have followed the rule there laid down. It
is to be noticed that the judgment in that case was never
enforced against the defendant. The court did not pass
sentence upon the defendant, but took a recognizance for
her appearance at court at a future day. In the mean-
time she obtained a full pardon from the governor, and
pleaded that pardon in bar of sentence, and the court
thereupon ordered her discharge. In this way the court
and the governor accomplished that which it seems the
legislature should have done, but neglected to do.

In a recent case the court of that state felt compelled
to follow the decision in *Commonwealth v. Mash, supra,*
because it had "been since acted upon as a part of our
system of law regulating marriages, and controlling
persons contemplating marriage", and the court further
said: "If the reasons which, after much difference of
opinion, have led to the final declaration in England,
that an honest and reasonable belief in the death of the
former wife or husband is a good defense to a prosecu-
tion for polygamy, should be dealt with here, it should be
by that department of the government which has the
lawmaking power." *Commonwealth v. Hayden,* 163
Mass. 453, 47 Am. St. Rep. 468.

The question being still undetermined in this state,
we feel at liberty to examine the reasons given by courts
holding a different doctrine. In Texas the matter seems
to be determined by the provisions of their criminal code.
"If a person laboring under a mistake as to a particular
fact shall do an act which would otherwise be criminal,
he is guilty of no offense. * * * The mistake as to
fact which will excuse, under the preceding article, must
be such that the person so acting under a mistake would

have been excusable had his conjecture as to the fact been correct; and it must also be such mistake as does not arise from a want of proper care on the part of the person committing the offense." *Watson v. State,* 13 Tex. App. 76. In that case it was held unnecessary to define in an instruction what is meant by proper care, and that an incorrect definition would require a reversal of the judgment.

In Indiana the law is stated to be that, "in a prosecution for bigamy, it is proper to charge the jury that if they believe from the evidence that the defendant had been informed that his wife had been divorced, and that he had used due care, and made due inquiry, to ascertain the truth, and had, considering all the circumstances, reason to believe, and did believe, at the time of his second marriage, that his former wife had been divorced from him, then they should find for the defendant." *Squire v. State,* 46 Ind. 459. In Bishop, Statutory Crimes (3d ed.) the subject is discussed and the conclusion of the discussion is given in these words (sec. 596a): "He is to be judged by the rule of the unwritten law, which pervades the entire system of our criminal jurisprudence, that, in the absence of carelessness or other fault, men are exempt from criminal liability who act uprightly on what appear to them to be the facts, equally when the appearances are found afterwards to be false as when they are true." In a note to the above section the author says: "The question has been a good deal muddled in some of the cases." In this note some of the cases are referred to in which the defendant was held guilty under such circumstances, and in criticising these cases it is said: "It is to be further noted of them, as circumstances not inspiring confidence in their conclusions, that the judges seemed utterly oblivious to the familiar rule of statutory interpretation, * * * that legislative acts are to be construed in connection with, and as limiting and limited by, the unwritten law. And, looking *only* at the statute, as they should not, and taking *no* cogniz-

ance of the doctrines of the common law, which they should, they were so confident in their own superior wisdom as to refuse, to convicted men, the boon of laying the question before the judges *in banc,* though they knew that other judges were of opinion contrary to their own. A frame of mind like this is not judicial." In regard to the case of *Commonwealth v. Mash, supra,* and in regard to the rule there announced, it is said: "But this sort of doctrine appears not to prevail to any considerable extent in our other states."

It is true that crimes against the marriage relation are dangerous to the peace of society and injurious to the morals of the people. Bigamy is a crime severely punished by the laws of all civilized states. It destroys the happiness of families and social order; it places the stigma of illegitimacy upon innocent children; it complicates and prevents the regular descent of property, and deprives the unoffending of their rightful inheritance. The law will not allow its penalties to be evaded by trifling or unsubstantial excuses. Divorces are matters of record. These records are for the information of all parties interested. A certified copy of the decree will resolve all doubts. One who contemplates a second marriage on the faith of a divorce should use such care and precaution as the great importance of the act demands. If he has had a former wife who has not been so long absent and unheard of as that the law presumes her death, he will not be justified in assuming the existence of a divorce from rumors, or from statements of individuals who have no special means of knowledge. No lapse of time will raise a presumption of divorce. Substantial evidence is required to justify such a conclusion. But, as stated by Mr. Bishop, when a man is misled without his own fault or carelessness concerning facts, and, while so misled, acts as he would be justified in doing were the facts as he believes them to be, he is legally innocent, the same as he is innocent morally. 1 Bishop, Criminal Law (8th ed.) sec. 303.

The defendant should have been allowed to make such proof if he could, and, upon evidence tending to show such a condition, the question as to his information and good faith, that is, as to the sufficiency of his ground of belief, and whether in fact he did believe that the obligations of his former marriage had been removed by a legal divorce, should be submitted to the jury with proper instructions.

Because of the error in regard to this evidence, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, J., dissenting as to conclusion.

I have no fault to find with the law laid down in the opinion, but it seems to me that it is inapplicable to the facts in this case, and that the exclusion of the offered testimony was not prejudicial. The evidence shows that defendant was married in 1883, and lived with his wife for 25 years. She bore him six children, five of whom were living at the time of the trial. The family home was in Ashtabula, Ohio. Baker and his wife had lived somewhat unhappily, and they separated some time in the summer of 1908. In the latter part of September or the first of October, 1908, he left Ashtabula, where his wife and family were, and came to his brother's home in Niobrara, Nebraska, where he remained until about the 20th of December, 1908. He testifies that while there he received a letter from his daughter Mrs. Knapp, that he burned up a lot of letters, and presumes that letter was amongst those he burned. He then offered to prove that he showed this letter to his brother Frank, that it informed him that his wife had obtained a divorce, and that the information was believed by him and relied upon by him. The defense also offered to prove by Frank Baker that the defendant received such a letter, that he read it, that it contained information that defendant's wife had

obtained a divorce in Ashtabula.  These offers were rejected and the evidence excluded.

He married again on January 11, a few days more than three months from the time he left Ohio.  After his arrest he stated he had been informed by a lawyer that his first marriage was not legal, and that it was unnecessary to procure a divorce.  The testimony of this attorney was offered by him, and received, to the effect that he had told · Baker the marriage laws of Ohio, as to the marriage of minors, had not been complied with at the time of the marriage; but he also testifies he told him that his wife was, at least, a common law wife, and that his advice was that, "to clear up the matter, the easiest way would be to get a divorce."

The case stands thus: A man leaves his wife and family in Ohio, comes to Nebraska, and, in about three months from the time of leaving, marries again.  His wife testifies that after he came west she wrote to him for money for the support of the family, and this is not disputed. Conceding that he had received the letter from his daughter, could this fact change the legal and necessary result of the undisputed facts?  He knew that his wife was living in Ashtabula, and that the expenditure of a few cents would procure him information from the proper officer as to whether a divorce had been granted.  The time was so short since he left his wife that he was not justified in blindly accepting such a statement, even if made.  He made no attempt to ascertain the facts.  The case is different from one where there was any care taken or any diligence used, or where there could be any well-grounded reason for such a belief.  There can be no doubt that the defendant did not use due care, because the proof shows he used no care at all, and made no inquiry, and, under all the authorities, due care and due inquiry are essential to such a defense.  It has been well said that "no man can be acquitted of the responsibility for a wrongful act, unless he employs the means at command to inform him-

53

self. Not employing such means, though he may be mistaken, he must bear the consequences of his negligence. If he relies on information obtained from others, he should have some just reason to believe that from them he could obtain information on which he may safely rely." If the evidence had been received, it would not have been erroneous for the court to instruct the jury that, under the circumstances of the case, it did not constitute a defense. If such facts as those offered to be proved constitute a valid defense in a prosecution for bigamy, then a man may acquire a new family with impunity every 90 days if he only testify that a relative within 90 days from his departure from his wife and home wrote him a letter telling him that his wife had received a divorce.

I think that, under all the circumstances shown, the, court committed no error in excluding this testimony, because, even if established, it did not constitute a defense. Under all the facts proved, I think that the sentence is too severe and should be reduced, but a new trial should not be granted.