# STATE v. LINDSEY.

[No. 2501.   Jan. 8, 1921.]

### SYLLABUS BY THE COURT.

1.   Section 1775, Code 1915, which provides for the punishment of any person convicted of bigamy or polygamy, is sufficient to authorize the conviction of one of the crime of bigamy, as the statute provides the punishment for the doing of an act which has in all English-speaking countries a well-understood meaning.                                        P. 529

2.   Under the statute, the good faith or honest purpose of the defendant is not a defense, if in fact he or she had a wife or husband living at the time and presumption of death had not arisen by reason of absence for the necessary length of time.                                                             P. 530

3.   A confession, in a legal sense, is restricted to an acknowledgement of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred.   A statement by a defendant in a bigamy case that he had been married at a certain time and place and to a person named, all being before the marriage for which he was prosecuted, is an admission and not a confession.        P. 531

4.   Objections to the admissibility of evidence, not raised in the trial court, will not be considered on appeal.      P. 533

Appeal from District Court, McKinley County; Ryan, Judge.

Jacob A. Lindsey was convicted of bigamy, and he appeals, Affirmed.

A. T. HANNETT, of Gallup, for appellant.

The indictment fails to state an offense, in that bigamy was not a crime at common law and the indictment fails to allege intent to commit the crime.   7 C. J. 1158; 5 Cyc. 628; Black's L. Dict. 131.

HARRY S. BOWMAN, Asst. Atty. Gen., for the State.

For definitions of bigamy see, Whart. Cr. L.

Under the definition bigamy was offense at common law and section 1775, Code 1915, recognizes the common law offense.   Ex parte DeVore, 18 N. M. 246, 136 Pac. 47.

It is immaterial, however, whether bigamy was a common law offense or not, as the statute of the state of New Mexico, when it imposes a penalty for the commission of the crime of bigamy, makes the commission of the acts constituting the offense a crime, and it is not necessary that the offense be defined by our statute, in view of the fact that the word has a common and well known meaning, and nothing can be added to it by defining it in other words. 16 C. J. p. 67, Sec. 28; Smith v. State, 58 Neb. 531, 78 N. W. 1059; State v. Hayes, 105 La. 352, 26 So. 937.

The indictment alleges that the defendant "maliciously, unlawfully, wrongfully and feloniously, did commit the crime of bigamy". Where the word "maliciously" is used, the word "knowingly" or "intentionally" is unnecessary, as knowledge and intent are included in the meaning of the word "maliciously". Bouvier's Law Dictionary, p. 2073; State v. Van Pelt, 136 N. C. 633, 49 S. E. 177, 68 L. R. A. 760, 1 Am. Ann. Cas. 495; Izzo v. Viscount, 74 N. J. L. 95, 64 Atl. 953; State v. Smith, 119 Tenn. 521, 105 S. W. 68; Richards v. Sanderson, 89 Pac. 769.

In discussing this proposition further, however, it is well to note the general rule that prevails that a specific intent to violate the law is not necessary in a prosecution for bigamy. The rule adopted in most of the jurisdictions is that the performance of the act of marrying a second time with a first wife living and undivorced, imples the intent to violate the law, and it is no defense that the accused was of the opinion that his first marriage was illegal, or that a divorce had been entered. The cases are collected and discussed in the note to the case of Baker v. State, 86 Neb. 775, 126 N. W. 300, 27 L. R. A. (N. S.) 1097, 7 C. J. 1163.

As to what constitutes confessions, see 2 Wigmore on Evid., Sec. 1050; 12 Cyc. 418; U. S. v. Amador, 6 N. M. 173.

The term "admission" is usually applied to specific

transactions, and to those matters of fact in criminal cases which do not involve criminal intent, while the term "confession" is generally restricted to acknowledgment of guilt. People v. Velarde, 59 Calif. 457; Colburn v. Groton, 66 N. H. 151, 28 Atl. 95, 28 L. R. A. 763; Notara v. DeKamalaris, 22 Misc. Rep. 337, 49 N. Y. Sup. 216; State v. Porter, 32 Oreg. 135, 49 Pac. 964.

### OPINION OF THE COURT.

ROBERTS, C. J. Appellant was convicted of the crime of bigamy, and appeals. The first ground upon which he relies for a reversal is that the indictment failed to charge facts sufficient to constitute a crime, for two reasons: (a) There is no such offense under the laws of the state of New Mexico as bigamy; and (b) the indictment failed to allege knowledge or intent on the part of the appellant.

[1] The statute, it is true, does not define the crime of bigamy. It simply provides (section 1775, Code 1915):

"Every person who shall be convicted of bigamy or polygamy shall be imprisoned not more than seven years nor less than two years."

It provides the punishment for the doing of an act which has in all English-speaking countries a well-understood meaning. The commonly understood meaning of the term "bigamy" is the having of two or more wives or husbands at the same time. In the case of State v. Hayes, 105 La. 352, 29 South. 937, the court dealt with an identical situation. The statute there simply provided for the punishment of any person convicted of the crime of bigamy, without defining the crime, and the judgment of conviction was attacked on the same grounds as here. The court said:

"True, as contended by the defendant, the crime of bigamy (quoted) is not particularly defined by the statute of 1898. It remains, however, that the word has a meaning not to be misunderstood, wherever the English language is spoken. It is so well understood that it requires no definition. It, in itself,

denounces an offense. If a definition of the word had been inserted, it would only have incumbered the statute, and would not have assisted the reader in discovering the meaning, which every reader knows very well. In State v. Smith, 30 La. Ann. 864, the crime charged had not been defined at common law. The one word used did not convey a 'world-wide definition of the term.' It had not, like murder, a fixed and definite meaning everywhere, or like other acts, having the same meaning wherever it is understood at all. There are offenses denounced eo nomine by statute, and wherever the word clearly conveys the legislative intent, and is universally understood, they have been sustained as legal and valid. While a different view has been taken when, as in the cited case, the word used conveys an uncertain meaning or is so broad and comprehensive as to render the statute uncertain and faulty, nothing of the sort suggests itself here, and we, in consequence, are unwilling to annul and set aside the statute."

The meaning of the word "bigamy" used in the statute is universally understood, and no language could have been employed which would have made clearer the intention of the Legislature. There is no merit in the objection that there is no such crime under the laws of this state.

[2] Was it necessary to allege in the indictment that the defendant knew at the time of the second marriage that the prior marriage was in full force and effect; or, in other words, was it essential to allege knowledge and intention? The Legislature may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer. 16 C. J., Criminal Law, § 42. There are many such offenses denounced in the statutes in various states. Under the ordinarily accepted meaning of the word "bigamy," given above, it will be observed that the knowledge or intention of the party is not an element of the definition of the offense or act. It might be, and doubtless is, in many states where the offense is defined by statute, essential to criminal bigamy or to a punishable offense that the second marriage should be contracted knowingly and intentionally, the party at the time knowing that the first marriage still subsisted, valid and binding, but not so under statute here. In probably a majority of the states, even under statutes defining the offense,

the good faith or honest purpose of the defendant is not a defense, if the marriage was contracted within seven years after the absence of the spouse. Many cases will be found cited in the case note to the case of Baker v. State, 86 Neb. 775, 126 N. W. 300, 27 L. R. A. (N.S.) 1097. In 7 C. J., p. 1164, it is said:

"The prevailing doctrine in this country is directly opposed to the English rule, the view being taken that it is the clear intent of the statutes that one who marries within the period designated by the statute shall do so at his peril."

The English rule is that:

"Bona fide belief based on reasonable grounds in the death of the absent husband or wife will acquit the accused of the crime of bigamy, although the second marriage took place within the statutory period." 7 C. J. p. 1164.

It not being necessary to allege in the indictment knowledge or intention, the indictment was sufficient to charge the offense in so far as this objection is concerned.

It is next urged that the court committed error in admitting in evidence a confession made by the accused in the office of the district attorney in San Francisco, in which he stated that he had been married at Vasalia, Cal., in February, 1911, to Beula Hash, and that he did not know whether he had been divorced from said wife, because the state did not show that the confession was made voluntarily.

[**3**] Defendant was on trial for bigamy, charged with having married Martha Lee Ketner on the 26th day of November, 1918, at which time it is alleged that he had a living wife. The difficulty in appellant's contention here is that the fact inquired about was not a confession, but simply an admission.

"A 'confession,' in a legal sense is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred."

State v. Reinhart, 26 Or. 466, 38 Pac. 822; State v.

Campbell, 73 Kan. 688, 85 Pac. 784, 9 L. R. A. (N. S.) 533, 9 Ann. Cas. 1203.

In the case last cited will be found a very exhaustive and instructive discussion of the distinction between a confession and an admission. In Wigmore on Evidence, § 821, the author says:

"An acknowledgment of a subordinate fact, not directly involving guilt, or, in other words, not essential to the crime charged, is not a confession; because the supposed ground of untrustworthiness of a confession is that a strong motive impels the accused to expose and declare his guilt as the price of purchasing immunity from present pain or subsequent punishment; and thus, by hypothesis, there must be some quality of guilt in the fact acknowledged. Confessions are thus only one species of admissions; and all other admissions than those which directly touch the fact of guilt are without the scope of the peculiar rule affecting the use of confessions."

In Words and Phrases, First and Second Series, under the subject of "Confession," will be found many cases distinguishing between the two, and all clearly showing that the statement here inquired about was an admission and not a confession. An admission is always receivable in evidence, without preliminary proof as to it having been made voluntarily and without compulsion. In many cases in this court, as well as others, the distinction has been overlooked, due to the failure of counsel to raise the question. In this case the guilt or innocence of the defendant did not lie in the fact of his prior marriage, because he had legal right to contract the same. His guilt was in the second marriage, and it was for this he was being prosecuted. The evidence was properly admitted.

It is lastly urged that the court erred in admitting in evidence an alleged exemplified copy of the marriage certificate and the record thereof in the county clerk's office in California, where the same was recorded, because (1) the certificate to the certifying officer does not state that he, of his own knowledge, knew that the clergyman who signed the marriage had performed the acts recited therein; and (2) because it does not appear that the certified copy of the record, as introduced,

would have been admissible in any of the courts of the state of California.

[4] The first proposition is so manifestly without merit that it does not require discussion. As to the second question it is disposed of by the observation that this ground of objection was not urged in the lower court. If counsel there had raised this point, it might have been obviated by proof. It has been many times held by this court that objections to the admissibility of evidence not urged in the trial court will not be considered on appeal.

Finding no error in the record, the judgment is affirmed; and it is so ordered.

PARKER and RAYNOLDS, J.J., concur.

#### SYLLABUS BY THE COURT.

