438 P.2d 161

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Larry WILLIAMSON and Carl Williamson, Defendants-Appellants.**

**No. 8264.**

Supreme Court of New Mexico.

March 4, 1968.

D. D. Archer, Artesia, Foster Windham, Carlsbad, for appellants.

Boston E. Witt, Atty. Gen., Paul J. Lacy, Edward R. Pearson, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

ARMIJO, Judge, Court of Appeals.

Appellants, Larry and Carl Williamson, appeal from their convictions of Armed Robbery, contrary to § 40A–16–2, N.M.S.A. (1953), and Kidnapping contrary to § 40A–4–1, N.M.S.A. (1953).

During the evening of February 5, 1966, an Armed Robbery and Kidnapping was committed within a residence in Carlsbad. The two persons committing the crimes entered the residence wearing nylon stockings and pieces of a towel to conceal their identity, and also wore army fatigue caps, coveralls, and were armed with a pistol and a metal bar. The victims of the above crimes will be identified as the store-manager, his wife, daughter and son.

Upon gaining entrance to the residence, all of the victims were forced to lie down on the floor, at which time the felons removed approximately one hundred dollars from the store-manager's billfold; then all of the victims were forced into their car. Before leaving, one of the felons picked up a small carrying bag from behind the residence. They all went, in the victims car, to a secluded area near a river where the wife, daughter and son were forced at gun point into the trunk of the car and there-after all proceeded to the store-manager's store where an attempted robbery by the felons was aborted. Afterwards, all, except the store-manager, drove to the same secluded area and the vehicle, together with the three persons in the trunk, was abandoned and the felons were seen fleeing on foot. One of the felons was observed carrying a small bag running toward another vehicle parked nearby and which later was identified as belonging to appellant, Carl. The officers found the small carrying bag approximately thirty-five feet behind appellant Carl's car during their investigation. The bag and its contents, which included a metal bar, pieces of ladies nylon stockings and other paraphernalia, part of which was identified as being very similar as that used by the felons, were later received in evidence. In the nylon stockings were found several human hairs.

Soon after the offenses were committed, the officers interrogated appellants at their home concerning Carl's car, and the officers testified as follows concerning the conversation:

"BY MR. HANAGAN: [district attorney] About what time was this that you were at the house approximately.

"A. [Officer Copeland] As I recall, it was 9:00 or 9:05 o'clock; something like that.

"Q. You say he admitted ownership of the Mercury?

"A. Yes, sir.

"Q. What else—what other conversation did you have between yourself and those boys at the time?

"A. Well, I advised them that the officers had found it on the river and we wanted to know if it was his car and he said, yes, it was his car.

"Q. What else did he say?

"A. And I asked him the, well then, did he know where it was at and why it was on the river and he said, well, that it had broken down; that's what he said.

"Q. And did he say about when?

"A. He said about *two hours ago.*

"Q. Did he say what had happened to it?

"A. No, sir, as I recall, the other subject, the one that brought me up the stairs said that it flooded out and wouldn't start.

"Q. Did the two boys—what else was said there at that time? You say the other boy said that it flooded out and wouldn't start?

"A. Yes, sir, they said that it flooded out and wouldn't start and *they* had just got home; *they* had just walked home.

"Q. *They* had just got home?

"A. Yes sir." [Emphasis added.]

Later the same evening, officers with the written consent of appellants' mother, searched the residence and removed a pair of boots admittedly belonging to appellant, Carl. These boots were later received in evidence. While in custody, Carl was given a haircut at his request; the officers and the barber prearranged for the haircut and the appellant Carl's hair was carefully preserved and later submitted for laboratory tests.

Testimony of the witnesses identified the similarity of the felons with that of the appellants as to height, weight, age, quickness of action and movements. A witness testified that appellant Larry had an eyebrow which resembled very closely the one observed under the disguise worn by one of the felons and described as an unusual or "freak" eyebrow. One witness observed that one of the felons had dark bushy hair, which she testified was very similar to the appellant Carl's hair. Some of the victims, while lying on the floor were able to observe the boots worn by one of the felons and these were identified as being very similar to those received in evidence, particularly as to the color, condition and dry mud or plaster substance on them. The hair samples obtained from appellant Carl were compared with hair found in the nylon stockings, and an expert witness testified that said comparison was alike in approximately twenty characteristics that were used as a basis for comparison, but declined to make positive identification simply because in some six of many thousands of similar tests, the results did not prove conclusive.

No testimony was offered on behalf of appellants.

Appellants rely on three points for reversal. The first is that the evidence being purely circumstantial, that it did not exclude every reasonable hypothesis other than defendants' guilt.

The trial court correctly instructed the jury on the law with regard to circumstantial evidence and no issue is raised in this regard.

Appellants rely strongly on State v. Seal, 75 N.M. 608, 409 P.2d 128 (1965) which reaffirms the settled rule in this jurisdiction with regard to circumstantial evidence. State v. Rice, 58 N.M. 205, 269 P.2d 751 (1954); City of Raton v. Cowan, 67 N.M. 463, 357 P.2d 52 (1960); State v. Flores, 76 N.M. 134, 412 P.2d 560 (1966).

In State v. Seal, supra, none of the circumstances were linked to the defendant, whereas in the instant case there was ample basis for submission of the case to the jury, and from which the jury could reasonably infer beyond a reasonable doubt the identity of the persons who committed the crime. The testimony in the instant case is as persuasive as that treated in State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967) wherein we stated:

"The defendant was identified as the person committing the crime by circumstances which exclude every reasonable hypothesis other than his guilt. * * *"

Unquestionably, a person may properly be identified by their size, height, movements, features, mannerisms and by clothing he wears—State v. Quintana, 69 N.M. 51, 364 P.2d 120 (1961), which involved a case of armed robbery committed by persons disguised by wearing nylon stockings.

The issue resolves itself to one of weight to be given the evidence. Little, if any, dis-

crepancy is disclosed by a review of the testimony. It is not essential for a conviction that a positive identification be made of the accused. It is sufficient if the witnesses testify that in their belief, opinion or judgment the person accused is the person who perpetrated the crime and want of positiveness goes only to the weight of the testimony. See People v. Deal, 42 Cal. App.2d 33, 108 P.2d 103 (1941); In re Corey, 230 Cal.App.2d 813, 41 Cal.Rptr. 379 (1964).

The reviewing court must confine its review of the testimony to determine if a conviction is supported by substantial evidence. State ex rel. Bliss v. Greenwood, 63 N.M. 156, 315 P.2d 223 (1957).

We conclude that from a consideration of the record as a whole, there was substantial evidence to submit the case for jury determination.

■ Appellants further contend that the pair of boots should not have been received in evidence over timely objection, because they were the result of an unlawful search and seizure and were of evidentiary value only.

The boots were removed from appellants' home, and appellants' mother, who was the head of the household present, freely gave the officers consent to search. Maxwell v. Stephens, 348 F.2d 325 (8th Cir. 1965). Cert. denied 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353 (1965).

The consent was given in writing and read as follows:

"I, the undersigned, do hereby voluntarily consent that *my house and surrounding property*, located at *501 N. Canyon*, together with all the contents thereof, may be searched by the officers securing this consent. I have been fully advised that I do not have to give this consent and that anything found as a result of such search, the possession of which either amounts to a crime under the Statutes of the State of New Mexico, or which may become involved in criminal proceedings, or which involve me in criminal proceed-

ings, may be retained by the officers, and may be used as evidence against me."

"s/ Mrs. George Williamson

"WITNESSES:

"Richard D. Goehring

"S. O. Wheeler"

The trial court specifically found and properly ruled that permission was voluntarily given; appellants, who are referred to as "boys", were single and living with their parents in their parents home. It follows that the boots were seized as a result of a lawful search and were properly received in evidence, and mere irregularity as might appear on the form used by the officers is not deemed controlling. See Nelson v. People of State of California, 346 F.2d 73 (9th Cir. 1965) cert. denied 382 U.S. 964, 86 S.Ct. 452, 15 L.Ed.2d 367 (1965); Morris v. Commonwealth, 306 Ky. 349, 208 S.W.2d 58 (1948). Voluntary consent was proved by clear and positive evidence and was uncontradicted. State v. Sneed, 76 N.M. 349, 414 P.2d 858 (1966).

In the recent case of People v. Clark, 60 Cal.Rptr. 569 Ct.App. (Cal.1967), where a coat was taken by an officer after defendant's mother gave permission to search defendant's bedroom in her house and at trial said coat was identified as similar to one worn by the felon, the exhibit was held admissible in evidence over objection that it was obtained without a warrant.

As to the boots being of evidentiary value only, as distinguished from instrumentalities, fruits of crime or contraband, we adhere to the rule that such distinction no longer prevails. See Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) where the court said:

" * * * We today reject the distinction as based on premises no longer accepted as rules governing the application of the Fourth Amendment.

"Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. * * Privacy is disturbed no more by a search

directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband. * * Indeed, the distinction is wholly irrational, since, depending on the circumstances, the same 'papers and effects' may be 'mere evidence' in one case and 'instrumentality' in another. See Comment, 20 U. Chi. L.Rev. 319, 320–322 (1953).

"The items of clothing involved in this case are not 'testimonial' or 'communicative' in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

"The premise in Gouled that government may not seize evidence simply for the purpose of proving crime has likewise been discredited. * * * *Schmerber* settled the proposition that it is reasonable, within the terms of the Fourth Amendment, to conduct otherwise permissible searches for the purpose of obtaining evidence which would aid in apprehending and convicting criminals. * * *

"The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the item would aid in the identification of the culprit.

"* * * The Fourth Amendment allows intrusions upon privacy under these circumstances, and there is no viable reason to distinguish intrusions to secure 'mere evidence' from intrusions to secure fruits, instrumentalities, or contraband."

Appellant's contention regarding the cutting of his hair and subsequent use for comparison with other hair was a violation of his rights against self-incrimination and in violation of the Fifth Amendment, is without merit. The appellant Carl, was asked and then requested that he be given a haircut on several different occasions. Necessary precautions were taken by the barber before the haircut was given, in order to segregate appellant's hair from any others that might have been present in the shop. Although the appellant was unaware of the nature of the future use of the samples taken, he made no protest. A recent case involving almost the identical point as the one we have here is State v. Bell, S.C., 156 S.E.2d 313 (1967). In State v. Bell, supra, in allowing the testimony of the comparison of sample of the defendant's hair with that found in the clothing of the victim, the court stated:

"* * * several head hairs of negroid origin were removed from the victim's clothing. Testimony was allowed as to a microscopic examination and comparison of these hairs with specimens of the defendant's head * * *.

"Counsel objected to the use of these specimens as a violation of the defendant's constitutional right against self-incrimination, and assign as error their admission in evidence. We see no element of testimonial compulsion in the admission of these exhibits, hence, no violation of the constitutional right invoked. State v. Griffin, 129 S.C. 200, 124 S.E. 81, 35 A.L.R. 1227.

"The testimony indicates that the hair specimens were voluntarily provided by the defendant, which in itself resolves the issue against him."

The distinction most often seems to resolve around the idea of whether or not the testimony offered by the state is "communicative" or "testimonial" in nature. In State v. Hudman, 78 N.M. 370, 431 P.2d 748 (1967) involving the procurement by a jailer of a letter from a prisoner to his wife, but instead used for comparison with a forged document, we concluded there is no longer uncertainty on the matter of using exemplars taken from the accused while he is in custody and awaiting trial, following the holding in Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) that the taking of handwritten exemplars did not violate petitioners fifth

amendment privilege against self-incrimination stating:

"* * * A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. * * *"

See also United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 1149 (1967) dealing with compulsory participation in a lineup and uttering of words purportedly used by a robber as not considered compulsion to utter words "testimonial" in nature in violation of accuseds' rights guaranteed by the Fifth Amendment to the Constitution of the United States.

Also noted in the recent case of Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) was:

"* * * The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony', but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Expert testimony relating to comparison of hair samples found in the nylon stocking furnished a sufficient basis from which a rational inference could be deduced by the jury in concluding they came from the head of one of the appellants.

 Appellants in their final point challenge the trial court's ruling admitting the overnight bag and its contents into evidence, over timely objection.

Part of the contents, namely, chains, padlocks and a butcher knife were found inside the bag, but these items were in no way linked with the crimes, nor were they introduced into evidence nor identified as exhibits and appellants were not prejudiced thereby. See Lipscomb v. State, 162 Neb. 417, 76 N.W.2d 399 (1956). As to the other contents, the metal bar, portion of ladies stocking and human hairs found therein, pieces of towel and an army fatigue cap, there was ample testimony from which the trial court could properly rule on their admissibility.

The record discloses appellants were at or near the scene where the victims car was finally abandoned, about the time of such abandonment and there was sufficient testimony from which the jury could infer they abandoned the bag at the place where it was found. Lipscomb v. State, supra, and the issue of identity was a matter for consideration of the jury. State v. Campos, 61 N.M. 392, 301 P.2d 329 (1959) and Commonwealth v. Burke, 339 Mass. 521, 159 N.E.2d 856, 77 A.L.R.2d 451 (1959).

Finding no error, the judgment appealed from is affirmed.

It is so ordered.

MOISE and CARMODY, JJ., concur.