466 P.2d 890

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Haywood HARRISON, Joe Davidson, Albert Woods, Defendants-Appellants.**

**No. 375.**

Court of Appeals of New Mexico.

Feb. 20, 1970.

Perry S. Key, Albuquerque, for defendant-appellant Harrison.

Charles R. Thompson, Charles A. Pharris, Albuquerque, for appellant Davidson.

Douglas T. Francis, Albuquerque, for defendant-appellant Woods.

James A. Maloney, Atty. Gen., Santa Fe, Robert N. Singer, Special Asst. Atty. Gen., Justin Reid, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

WOOD, Judge.

There were armed robberies of a service station and a drive-in theater. Woods, Harrison and Davidson were convicted of both offenses. Their appeals require discussion of: (1) the sufficiency of the evidence, including evidence as an aider and abettor; (2) whether there should have been separate trials; (3) whether lineup identification should have been suppressed; (4) search and seizure; and (5) the failure to give a limiting instruction.

*Sufficiency of the evidence.*

Each of the defendants challenges the sufficiency of the evidence.

(a) *Woods.*

This defendant asserts the proof of his guilt is purely circumstantial and not incompatible with innocence. To reach this

assertion he brushes off the "questionable testimony of eyewitnesses" because eyewitness testimony is suspect.

Woods was positively identified at trial as a participant in both crimes. Even if the witnesses who identified Woods at the trial made less than a positive identification at other times, the credibility of their testimony was for the jury to decide. State v. Ortega, 79 N.M. 744, 449 P.2d 346 (Ct. App. 1968). Further, State v. Williamson, 78 N.M. 751, 438 P.2d 161 (1968), cert. denied 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968), states:

"* * * It is not essential for a conviction that a positive identification be made of the accused. It is sufficient if the witnesses testify that in their belief, opinion or judgment the person accused is the person who perpetrated the crime and want of positiveness goes only to the weight of the testimony. * * *"

Since Woods was identified by eyewitnesses, his identification and his guilt was not established by purely circumstantial evidence.

(b) *Harrison.*

As to the drive-in theater robbery, Harrison was positively identified by the ticket seller from whom the money was taken. Her out-of-court identification of Harrison was admittedly weak; this, however, was a matter of the credibility of the witness' identification rather than a matter of admissibility. State v. Williamson, supra; State v. Ortega, supra.

Further, as to the theater robbery, there is the circumstance that a ticket taker's hat, taken in the robbery, was found in Harrison's home. The evidence identifying Harrison as a participant in the theater robbery is substantial.

As to the service station robbery, neither the attendant who was robbed nor the customer who was present testified that Harrison was a participant in this robbery. However, an investigating officer testified the customer "positively" identified Harrison at a police line-up as one of the robbers. Counsel had made a "continuing objection" to any identification testimony based on the line-up. Assuming the sufficiency of such a continuing objection, it does not benefit Harrison.

The officer's testimony as to the customer's line-up identification of Harrison as one of the service station robbers was elicited by counsel for Harrison on cross-examination. "* * * A defendant cannot be heard to complain on appeal that he was prejudiced by evidence which he injected into the case. * * *" State v. Sedillo, (Ct.App.), 81 N.M. 47, 462 P.2d 632, 635, decided October 31, 1969, cert. denied December 19, 1969. Although the officer's testimony as to the customer's identification was hearsay, it having been brought into the case by this defendant, it was evidence as to Harrison's participation in the service station robbery. State v. Romero, 67 N.M. 82, 352 P.2d 781 (1960); see State v. Minor, 78 N.M. 680, 437 P.2d 141 (1968); State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967).

There is evidence that Harrison's car, identified by its license number, was observed "hesitating" in front of several service stations; that when last observed this car was heading in the direction of the robbed service station only a few minutes prior to that robbery. There is evidence that one of the theater robbers, identified as Harrison, was in his early twenties and was wearing a dark red shirt. The second robber at the service station was described as about twenty and wearing a red shirt. This evidence, together with the officer's testimony, is substantial evidence of Harrison being a participant in the service station robbery.

(c) *Davidson.*

There is no direct evidence that Davidson participated in either of the armed robberies. The witnesses, when asked, declined to identify Davidson as being present.

There is testimony that Davidson was with Woods and Harris before, after and during the time the crimes were committed. There is evidence that Woods and Harri-

son committed the crimes. On this basis, the State contends the jury could infer that Davidson was a participant. This is incorrect. This evidence supports a determination that Davidson was present when the crimes were committed. Presence alone, is insufficient to sustain a conviction. Nor is presence with mental approbation sufficient " '* * * if unaccompanied by outward manifestation or expression of such approval, * * *' " State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967).

■ For Davidson's conviction to be sustained, he must have aided or abetted the crimes. State v. Graves, 73 N.M. 79, 385 P.2d 635 (1963). To be an aider or abettor, one must share the criminal intent of the principal. There must be a community of purpose, a partnership, in the unlawful undertaking. State v. Salazar, supra.

State v. Ochoa, 41 N.M. 589, 72 P.2d 609 (1937), states:

"* * * The evidence of aiding and abetting may be as broad and varied as are the means of communicating thought from one individual to another; by acts, conduct, words, signs, or by any means sufficient to incite, encourage or instigate commission of the offense or calculated to make known that commission of an offense already undertaken has the aider's support or approval. * * *"

There is evidence that the three used Davidson's car during the night the crimes were committed; that when stopped and arrested 2½ hours after the second crime was committed Davidson was driving. This does not show Davidson incited, encouraged, instigated, supported or approved the crimes because this use of Davidson's car is not connected with the crimes. The evidence is that Davidson's car was used in looking for girls, going to a pool hall, checking on a dog and visiting a friend. There is no evidence that Davidson's car was used in connection with either crime. There is an inference that Harrison's car was used in connection with the robbery of the service station; neither evidence nor inference as to the car used in the robbery of the theater.

When the police stopped Davidson's car, Harrison attempted to hide a paper sack under a seat of the car. The sack contained coins and a pair of gloves. Neither item was tied in with the robberies.

There is neither evidence nor inference that Davidson was an aider or abettor. His conviction is reversed. Compare State v. Ortega, supra; State v. Perez, 79 N.M. 417, 444 P.2d 602 (Ct.App.1968).

*Whether there should have been separate trials.*

Woods, Harrison and Davidson were tried jointly. The issue here concerns the motions of Woods and Harrison for separate trials.

The trial court denied the motions for separate trials prior to the trial. During the trial Woods again moved for a severance of his trial. This was denied. At the close of the evidence both defendants renewed their motions. The motions were again denied.

Woods contends he should have been granted a separate trial because certain of the witnesses identified Harrison but did not identify him. Woods took the stand, Davidson did not. Woods contends this " * * * may have caused the jury to discredit the testimony of Albert Woods, * * *" He also contends: "The very fact that Albert Woods and Haywood Harrison took the stand and Joe Davidson did not is prejudicial comment." None of these contentions were presented to the trial court in support of any of Woods' motions for a separate trial. They are raised here for the first time.

The written statement of Woods was introduced in evidence at the trial. This statement is discussed in the last point of this opinion. In connection with the severance issue, Harrison contends he could not exclude this statement in the joint trial but could have excluded it if he had been granted a separate trial. Thus, he con-

tends the trial court erred in denying his motion for a severance. We do not reach these contentions. Nor do we decide the applicability of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As to the applicability of *Bruton*, compare State v. Turnbow, 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960) and State v. Martin, 53 N.M. 413, 209 P.2d 525 (1949). We do not reach these contentions because they were never presented to the trial court. They are raised here for the first time.

Since the contentions of Woods and Harrison, for a severance, were not presented to the trial court and are raised here for the first time, these contentions have not been preserved for review. State v. Miller, 79 N.M. 117, 440 P.2d 792 (1968); State v. Torres, (Ct.App.), 81 N.M. 521, 469 P.2d 166 decided January 30, 1970. Compare State v. Fagan, 78 N.M. 618, 435 P.2d 771 (Ct.App.1967).

*Whether line-up identification should have been suppressed.*

The remaining contention of Woods is that his line-up identification should have been suppressed.

At the hearing on the motion to suppress, Woods offered his attorney's affidavit. According to the affidavit, the attorney was appointed to represent Woods and did represent Woods when he appeared before a justice of the peace. The justice of the peace hearing occurred at 10:00 a. m. According to the attorney's affidavit, " * * * I advised him [Woods] to say nothing to the Police or anyone else unless I was present." Further, that Woods "was made to appear" in a series of line-ups between noon and 1:00 p. m. of the same day; that counsel was not present at the line-ups and was never informed that the line-ups were to be held.

At the hearing, Woods identified a "request of waiver form" that he had signed. Written in, above Woods' signature, was the phrase, "I will stand in a line up without an attorney." This phrase was written in by Detective Foote. Woods denied that he understood what he was signing and denied that the written phrase had been added before he signed.

The foregoing is the evidence on which Woods relies. His contention is that testimony as to his line-up identification should have been suppressed because his court appointed counsel was not present at the line-up. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

The State also relies on *Wade*, supra, pointing out that the presence of counsel at a line-up may be waived. The State asserts there was a waiver in this case. It relies on the fact that the form signed by Woods had a space for the name of the attorney, that Woods did not fill in his attorney's name although he signed the form approximately one-half hour after counsel had been appointed to represent him. It relies on the fact that at the justice of the peace hearing where counsel was appointed, Woods was advised that he had the right to have an attorney " ' * * * at every stage of this case and every stage of these proceedings. * * * ' "

The State also relies on the testimony of Officer Chavez. This officer testified that Woods was asked if he had an attorney and if he would stand in a line-up without the presence of counsel; that Woods stated that he didn't want an attorney and would stand in a line-up without an attorney. The officer testified the phrase on the form was written in after he advised Woods of his right to have counsel present and was an accurate representation of Woods' statement. The officer testified that Woods read the form and indicated he understood it before he signed it. The officer wasn't sure that Woods had appeared before the justice of the peace before Woods signed the form because the officer only saw Woods in the jail section of the police department.

Woods asserts that if the State's evidence shows a waiver, the time sequence is such that the waiver could not be an intelligent one.

■ The State has the burden of showing that Woods knowingly and intelligently waived his right to have counsel present during the line-up. See State v. Lopez, 80 N.M. 130, 452 P.2d 199 (Ct.App.1969); compare State v. Herring, 77 N.M. 232, 421 P.2d 767 (1966). Whether Woods knowingly and intelligently agreed to stand in a line-up without the presence of his counsel is a question of fact. See State v. Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App.1969); State v. Lopez, supra. Whether that fact has been properly determined by the trial court is subject to the limitations of judicial review. What was said in State v. Sneed, 76 N.M. 349, 414 P.2d 858 (1966), concerning consent to search, is applicable here. There, it is stated:

"The question of whether consent has been given is a question of fact subject to the limitations of judicial review. * * * Each case must stand or fall on its own special facts, and in the trial court's judgment of the credibility of the witnesses. * * *

"The circumstances of the claimed consent were presented to the trial court. We decline to hold, that as a matter of law, the trial court was in error in denying the motion. * * *"

■ The evidence, and inferences therefrom, conflicts as to whether Woods waived the right to have counsel present at the line-up and whether Woods intelligently understood what he was doing. The issue here must stand on the trial court's judgment as to the credibility of the witnesses. Compare State v. Torres, supra. We cannot hold, as a matter of law, that the trial court erred in denying the motion to suppress.

*Search and seizure.*

■ The ticket taker's hat, taken in the theater robbery, was seen by the police in Harrison's home and taken into custody. Harrison moved to suppress this evidence, contending the hat was obtained by an unlawful search and seizure. A search and seizure may be by consent, as an incident to a lawful arrest or pursuant to a legal search warrant. State v. Sedillo, 79 N.M. 289, 442 P.2d 601 (Ct.App.1968). Here the issue is whether there was consent.

Having information that Harrison's vehicle had been seen in the vicinity of the service station robbery, officers went to Harrison's home. They knocked at the door. Mrs. Harrison came to the door and invited them in. While on the porch, and before entering the house, they saw two hats on a kitchen table. One hat matched the description of a hat reportedly worn by one of the robbers. The other hat was the ticket taker's. The officers had no information about the ticket taker's hat at the time. The testimony is that the two hats were taken with the permission of Mrs. Harrison, that she was given a receipt for them and that she acknowledged on the receipt that the hats were taken with her consent.

State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), cert. denied 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968), states:

" * * * [C]onsent to the search must be freely and intelligently given, must be voluntary and not the product of duress or coercion, actual or implied, and must be proved by clear and positive evidence with the burden of proof on the state. * * *"

■ Harrison says the facts recited above do not meet this test. He asserts there is no evidence that the officers obtained permission to search the house. The answer is that the hats were not obtained as a result of a search. The undisputed evidence is that they were in view, seen by the officers even before they entered the house. See State v. Blackwell, 76 N.M. 445, 415 P.2d 563 (1966) for a definition of a search.

Harrison next claims that Mrs. Harrison did not voluntarily surrender the hats, that she did no more than submit to authority. In the alternative, Harrison asserts that proof of Mrs. Harrison's consent was not by clear and positive evidence. We disagree. The only evidence as to the

consent is clear, positive and in no way contradicted. The State met the burden of proof required by State v. Aull, supra.

■ Harrison also claims he did not consent, that the only consent was by Mrs. Harrison, that her consent was not effective to permit the seizure of the hats. This claim was decided adverse to Harrison's contentions in State v. Kennedy, 80 N.M. 152, 452 P.2d 486 (Ct.App.1969).

Harrison's last contention under this point is that the ticket taker's hat was taken during a criminal investigation and that Mrs. Harrison's consent to the taking of the hat was in effect testimony against her husband. Relying on § 40A–1–12, N.M.S.A.1953 (Repl.Vol. 6), he asserts his wife was not competent to give this consent.

■ We do not decide this issue. It was not presented to the trial court. It is raised here for the first time. The contention has not been preserved for review. State v. Torres, supra.

*Failure to give a limiting instruction.*

A written statement of Woods was admitted as evidence during the trial. Harrison requested an instruction limiting consideration of the statement to Woods. Harrison contends the trial court erred in refusing to give the requested instruction. He relies on New Mexico decisions where the confession or admission of a co-defendant was in evidence. In those cases a limiting instruction was given which informed the jury to consider that evidence only as to the co-defendant and not to consider it against the defendant. State v. Lord, 42 N.M. 638, 84 P.2d 80 (1938); State v. McDaniels, 27 N.M. 59, 196 P. 177 (1921); State v. Fagan, supra; State v. Pope, 78 N.M. 282, 430 P.2d 779 (Ct.App. 1967).

The parties dispute whether Woods' statement is a confession or an admission. Certainly it is not a confession; that is, a declaration of guilt. State v. Lindsey. 26 N.M. 526, 194 P. 877 (1921); Shellman v. State, 157 Ga. 788, 122 S.E. 205 (1924). The statement makes declarations as to

Woods' whereabouts on the night of the crimes and to that extent is an admission. See State v. Lindsey, supra. But whether the statement amounts to an admission against Woods' interest is doubtful. The statement is totally exculpatory as to Woods; it does not tend to incriminate him in any way. See Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

Assuming, however, that Woods' statement amounts to an admission against the interest of Woods, what does that have to do with Harrison? The New Mexico decisions approve the giving of the limiting instruction, but not because the statement was a confession or an admission of the declarant. The limiting instruction has been approved because the statement implicated the appealing defendant. State v. Lord, supra; State v. McDaniels, supra; State v. Fagan, supra; State v. Pope, supra. The issue is not whether Woods' statement amounts to a confession or an admission against Woods' interest. The issue is whether Woods' statement in any way implicated Harrison.

■ The contents of Woods' statement does not implicate Harrison in either of the crimes. The statement places Harrison with Woods during the evening and night of the crimes but locates both of them at places and at times so that, if true, neither of them could have committed the armed robberies. The contents of the statement being favorable to Harrison, it would have been against Harrison's interest to limit consideration of the statement to Woods. Considering only the contents of the statement, refusal of the requested instruction was not error.

Harrison's point, however, is not limited to the contents of the statement. His contention also involves how the statement was used. Woods testified in his own defense. His testimony is consistent with his statement in that both are exculpatory. However, the statement places Woods and Harrison at various locations at times different than those given in Woods' oral

testimony. To this extent it contradicted his oral testimony. There is, also, a possible contradiction as to some of the places the two men visited on the night of the crimes. The statement, raising these contradictions, was introduced as evidence during the State's cross-examination of Woods. Harrison followed Woods to the stand. His testimony, generally, is consistent with Woods' oral testimony. Both men testified they were together during the evening and night of the crimes. Thus, Woods' statement contradicts Harrison's testimony as to the times he visited various places and possibly contradicts Harrison's testimony as to some of the places visited.

Harrison contends Woods' statement " * * * was prejudicial to this defendant, since it was used to impeach the alibi of the whereabouts of the defendants at the time the alleged crimes were committed. * * * " The use of Woods' statement may have impeached Harrison's oral testimony. We will assume it did. Going further, we will assume that the use of Woods' statement caused the jury to disregard the fact that Woods' statement was largely corroborative of the oral testimony of Woods and Harrison. We will assume the use of the statement caused the jury to disbelieve Woods and Harrison entirely. We will disregard the fact that the use of the statement for impeachment purposes still failed to implicate Harrison in the crimes. Instead we will assume, although we do not decide, that under the above assumptions, Harrison's requested instruction should have been given.

Even with the foregoing assumptions, the failure to give the instruction was not error. No objection was made to the admission of Woods' statement. It was not offered, nor received, for a limited purpose. Harrison's requested instruction was a request to withdraw Woods' statement from the consideration of the jury. Once improper testimony is admitted without objection (we are assuming the admission of Woods' statement was improper as to Harrison),

" * * * it is discretionary with the trial court to withdraw it from the consideration of the jury, but it is not error to refuse to do so. * * * " State v. Lord, supra.

The trial court did not err in refusing to give the requested instruction.

The judgments and sentences of Woods and Harrison are affirmed. The judgment and sentence of Davidson is reversed. The cause is remanded with directions to discharge Davidson.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.